Submitted April 28, 2016; conviction for fourth-degree assault reversed and remanded, otherwise affirmed June 21, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN ASHLEY LONG,
*Defendant-Appellant.*

Douglas County Circuit Court
12CR2016FE; A157564

399 P3d 1063

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Lindsey Burrows, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Following an altercation between defendant and his girlfriend, Gregory, defendant was convicted of one count of fourth-degree assault constituting domestic violence,[1] which requires the state to prove, in part, that a person "cause[d] physical injury to another." ORS 163.160(1)(a). "Physical injury" is defined as "impairment of physical condition *or* substantial pain." ORS 161.015(7) (emphasis added). On appeal, defendant argues that the record lacks evidence sufficient to permit a finding that Gregory suffered "substantial pain," and that the trial court erred in giving the jury the opportunity to convict defendant on that theory of physical injury. For the reasons explained below, we agree with defendant. The judgment is reversed and remanded as to the fourth-degree assault conviction, and otherwise affirmed.[2]

We review the facts in the light most favorable to the state, which prevailed at trial. *State v. Summers*, 277 Or App 412, 413, 371 P3d 1223, *rev den*, 360 Or 465 (2016). Defendant and Gregory got into a fight after defendant refused to clean up the front yard. Gregory called a friend, Scevers, after the fight and told him that defendant had assaulted her. According to Scevers's trial testimony, Gregory was "very upset and crying," and said that defendant had choked her and hit her in the jaw. At Gregory's request, Scevers called 9-1-1. He also testified that he noticed "marks" on Gregory's neck when he saw her several days after the attack.

Officer Barrett responded to Scevers's call and interviewed Gregory and her roommate. The state's case at trial relied heavily on Barrett's testimony. Barrett testified that he observed swelling around Gregory's left cheek, bruising beginning to form near her left eye, and scratch marks around her collar bone and neck. According to Barrett, Gregory told him that the argument began after she asked defendant to

---

[1] ORS 132.586(2) provides that when a crime involves domestic violence, "the accusatory instrument may plead, and the prosecution may prove at trial, domestic violence as an element of the crime. When a crime is so pleaded, the words 'constituting domestic violence' may be added to the title of the crime."

[2] Defendant was also charged with one count of felony strangulation constituting domestic violence, ORS 163.187(4), and was acquitted on that count.

clean up the front yard; defendant yelled and "head butted" her. Defendant then pushed her into the kitchen and began kicking and punching her; at one point, defendant held her down on the ground with his hand around her neck. The altercation moved to the front porch, where defendant shoved Gregory against the front door, grabbed her around the throat, and shoved her into a porch chair. Defendant then left the scene. When Barrett asked whether Gregory could still breathe during the assault, she answered that her breathing was disrupted when defendant grabbed her by the neck in the kitchen, but not when he grabbed her neck on the porch. She said that if defendant had squeezed any harder she "wouldn't be able to breathe at all."

Barrett also described his interview with the roommate, Cook. Cook told Barrett that she was in the bathroom when she overheard the argument; she emerged to see defendant attacking Gregory in the kitchen. Cook described defendant being on top of Gregory, then hitting, kicking, and choking her.

The evidence at trial also included Barrett's photographs from the day of the assault, which show that Gregory's face is flushed and indicative of recent crying. The photographs depict what appears to be slight swelling of Gregory's cheek and several small scratches or bruises near her neck. Additional photographs, taken the next day, show no visible facial swelling and little or no bruising.

The trial testimony of both Gregory and Cook was very different from Barrett's. Contrary to Barrett's testimony about her interview, Cook testified that she did not recall seeing defendant choke, strangle, or kick Gregory. According to Gregory's testimony, when defendant refused to clean up the front yard, the two got into an argument that culminated in Gregory aiming a kick towards defendant. She explained that the argument "escalated into the kitchen," where she came towards defendant angrily; in response, defendant put his hand out to stop her, making contact with her neck and collar bone area. She testified that she "starting hitting [defendant]" and temporarily prevented him from leaving the scene. Finally, she testified that, when the police arrived, she falsely reported that defendant

had strangled her because she was still angry and wanted defendant to "get in trouble."

Significantly for this appeal, when asked by defense counsel at trial whether she remembered feeling "a lot of pain," Gregory answered "no," explaining that she has a "high pain tolerance." The prosecutor also inquired whether Gregory recalled complaining of pain from the assault:

"[PROSECUTOR:] And so when we went over injuries you never indicated that your jaw hurt at all?

"[GREGORY:] No.

"[PROSECUTOR:] Do you recall on September 16th, 2012, complaining of pain in your jaw and saying it was sore to the touch to officers?

"[GREGORY:] No.

"[PROSECUTOR:] And so—

"[GREGORY:] I don't recall.

"[PROSECUTOR:] Okay. And so are you confident that you had no pain in your jaw on that second day?

"[GREGORY:] I'm pretty sure.

"[PROSECUTOR:] And so do you think—well, and do you recall your left arm was sore and painful to the touch?

"[GREGORY:] No.

"[PROSECUTOR:] And do you recall telling officers that?

"[GREGORY:] Vaguely.

"[PROSECUTOR:] And so just to go back and clarify. It wasn't sore?

"[GREGORY:] I can't remember. Maybe, maybe not. At the moment I wanted [defendant] to get in trouble. It was an exaggeration."

At the close of the state's case-in-chief, defendant moved for a judgment of acquittal (MJOA) on the "substantial pain" theory (but not on the "impairment of physical condition" theory) of fourth-degree assault, arguing that the state had failed to present sufficient evidence to support a conviction on the ground that Gregory had suffered substantial pain.

Alternatively, defendant argued for the court to require the state to "elect" to proceed under the "impairment of physical condition" theory of physical injury. That is, defendant argued that the only plausible evidence of "physical injury" in the record was Barrett's testimony regarding Gregory's initial statement that her breathing was "impaired" when defendant grabbed her by the neck. Thus, defendant requested that the charges be "narrowed down" to specify that the state was proceeding under the "impairment of physical condition" theory, and not "substantial pain." The state responded that the evidence was sufficient to support a conviction under either theory of physical injury. Specifically, the state noted that "there was testimony that [Gregory] complained of pain in her jaw and stated it was sore to the touch the next day," and that that evidence was "probably sufficient to establish substantial pain."

The trial court denied defendant's motions, ruling that the evidence, viewed in the light most favorable to the state, was sufficient to go forward on both theories of physical injury.

The court's ruling on defendant's motions was followed shortly afterward by a discussion of jury instructions. Both defendant and the state had originally requested Uniform Criminal Jury Instruction (UCrJI) 1044, which defines "physical injury" as "an injury that impairs a person's physical condition or causes substantial pain." During the jury-instruction colloquy, although defendant excepted to the instruction on a different ground,[3] he did not specifically reiterate the point made in his earlier motions—that is, he did not argue that the instruction should be narrowed to remove the issue of "substantial pain" from the jury's consideration on the ground of insufficiency of the evidence. The trial court ultimately instructed the jury on both theories of "physical injury" using a modified version of UCrJI 1044,

---

[3] At the time of defendant's trial, UCrJI 1044 defined both "physical injury" and "serious physical injury." Defendant objected to the giving of UCrJI 1044 on the basis that the record contained insufficient evidence to support an instruction on "serious physical injury." The trial court agreed and gave a modified version of the instruction that defined only "physical injury." UCrJI 1044 has since been revised to, among other things, split the definitions of "physical injury" and "serious physical injury" into two separate instructions, UCrJI 1044 and UCrJI 1044A, respectively.

and the jury returned a general verdict finding defendant guilty, with no indication of whether the verdict was based on "impairment" or "substantial pain."

On appeal, defendant reprises his contention that the state failed to adduce evidence that Gregory suffered "substantial pain," and that the trial court therefore erred by permitting that theory to go to the jury. The trial court's error was harmful, defendant argues, because it allowed the jury to consider a theory of "physical injury" that is unsupported by evidence in the record.

The state, for its part, appears to have abandoned its position below that the record *is* sufficient to support a finding of substantial pain. Instead, the state now argues that, even if defendant is correct that the evidence would only support a finding of "physical injury" through "impairment of physical condition," the trial court committed no error because defendant's motions were procedurally improper mechanisms for obtaining the relief that defendant sought. According to the state, defendant should have objected to the giving of UCrJI 1044 (defining "physical injury" as an injury that causes "substantial pain") on the ground that the instruction was not supported by evidence in the record. *See State v. Wan*, 251 Or App 74, 80, 281 P3d 662 (2012) ("A party is entitled to have the jury instructed on the law that supports that party's theory of the case when (1) *there is evidence to support that theory* and (2) the requested instruction is a correct statement of the law." (Emphasis added.)). Put differently, the state argues that, because defendant chose the wrong procedural vehicle below for challenging the submission of the state's "substantial pain" theory to the jury, defendant cannot prevail on appeal based on his substantive challenge to the sufficiency of the state's evidence with respect to "substantial pain."

Assuming, without deciding, that the state is correct that a MJOA was not the correct procedure for defendant's challenge to a particular *theory* of "physical injury," we are nonetheless persuaded that defendant's arguments on appeal were squarely presented below and, for that reason, are properly before us. Defendant consistently argued that the evidence was insufficient to support a conviction

under the "substantial pain" theory; the state responded to that argument on its merits (never asserting that a MJOA was procedurally improper), and the trial court ruled on the merits. Under those circumstances, the issue of whether the trial court erred in submitting the "substantial pain" theory to the jury is presented for our review, even if it was not procedurally "pigeonholed" correctly. *See State v. Meyer,* 183 Or App 536, 542, 53 P3d 940 (2002) (where the issue was raised to the trial court, "we decline to hold that the possible failure of defendant's motion to readily fit into any particular procedural pigeonhole divests him of any opportunity to be heard on that issue"); *see generally Peeples v. Lampert,* 345 Or 209, 220, 191 P3d 637 (2008) ("What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court."); *State v. Pierce,* 204 Or App 641, 645, 131 P3d 776 (2006) ("[B]ecause the state invited the trial court to rule on the [MJOA's] merits, we likewise find no reason not to consider defendant's motion for a judgment of acquittal on the merits."); *State v. Brust,* 158 Or App 455, 458, 974 P2d 734, *rev den,* 329 Or 61 (1999) (reaching the merits of defendant's argument with respect to an untimely MJOA where the state did not object to the motion as untimely and where the trial court had the opportunity to rule, and did rule, on the merits of the parties' contentions).

We now turn to the merits of defendant's argument that the state presented insufficient evidence to permit a finding that defendant caused Gregory "substantial pain." We consider that argument consistently with our standard for reviewing a motion for judgment of acquittal, viewing the evidence "in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Guzman,* 276 Or App 208, 211, 366 P3d 816 (2016) (internal quotation marks omitted).

The phrase "substantial pain" refers both to the degree and the duration of pain subjectively experienced by a victim. *State v. Poole,* 175 Or App 258, 261, 28 P3d 643

(2001); *see also Guzman*, 276 Or App at 211 (substantial pain inquiry is "subjective"). And, under our case law, to be "substantial," pain must be "ample" or "considerable," and not "fleeting or inconsequential." *Poole*, 175 Or App at 261; *see, e.g., State v. Lewis*, 266 Or App 523, 337 P3d 199 (2014) (insufficient evidence of "substantial pain" where the victim, who had her hair pulled out by the defendant, did not testify that she felt pain and there were no physical signs from which it could be inferred that she had suffered substantial pain); *State v. Rennells*, 253 Or App 580, 586-87, 291 P3d 777 (2012), *rev den*, 353 Or 410 (2013) (evidence insufficient to show "substantial pain" where the victim experienced bruising on her legs that lasted several days but did not testify that she had suffered any pain and, when asked by the prosecutor whether it hurt when the defendant kicked her, answered, "No, I was kicking him"); *State v. Pipkin*, 245 Or App 73, 77, 261 P3d 60 (2011), *aff'd*, 354 Or 513, 316 P3d 255 (2013) (pain "substantial" where the victim was in pain an hour after the attack and where the victim's injuries—a swollen eye, "popped" shoulder, and hurt back and elbow—were of "substantial degree"); *Poole*, 175 Or App at 261 (evidence supported a finding of substantial pain where the victim—who had been kicked on the forearm by a person wearing steel-toed boots—suffered sharp, throbbing pain that lasted 24 hours but did not experience any bruising or require any medical attention); *State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 682, 813 P2d 58 (1991) (headache that lasted approximately one hour constituted substantial pain); *State v. Capwell*, 52 Or App 43, 46-47, 627 P2d 905 (1981) (evidence did not support a finding of "substantial pain" where the victim testified that he "had pain" and that it "hurt" when the defendant kicked him and struck him with a gas can, but where the record did not otherwise indicate the "degree of the pain" or that the pain was "anything more than a fleeting sensation").

Ordinarily, whether a victim has suffered "substantial pain" is a question for the trier of fact; however, whether the evidence is *sufficient* to submit that question to the factfinder depends on the nature of the evidence itself. *Guzman*, 276 Or App at 212. The latter inquiry can be especially challenging in cases lacking direct evidence of pain (*i.e.*, where

the victim has not testified or provided only neutral testimony), or in cases, such as this, where the victim directly casts doubt on the existence or severity of any such pain. *Id.* at 213. In such cases, the trial court's role is to determine whether, as a matter of law, reasonable inferences may be derived from the evidence so as to permit submitting the issue to the factfinder. *Id.*; *see also State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) ("Whether particular circumstantial evidence is sufficient to support a particular inference * * * is a legal question for a court to decide. * * * Reasonable inferences are permissible, speculation and guesswork are not." (Citations omitted.)).

Most recently, we found such an inference to be permissible in *Guzman*. In that case, the state was unable to produce an assault victim as a witness at trial and, consequently, the jury did not hear testimony describing the level or duration of the pain suffered by the victim. 276 Or App at 210-11. The state did, however, present testimony from witnesses describing the victim's injuries and demeanor (the victim had "scratches and welts on her arms and her face" and was "crying hysterically"), as well as photographs that depicted "bright red scratches on the victim's chin and left cheek; some swelling on both of the victim's cheeks, around both of her eyes, and on the left side of her forehead; and more pronounced swelling on the right side of the victim's forehead, from her eyebrow to her hairline." *Id.* at 210. On appeal, we reasoned that, despite the absence of the victim's testimony, the evidence was sufficient for a rational juror to infer that the victim had suffered "substantial pain." Specifically, the evidence adduced by the state created a "reasonable probability" that the victim's significant facial swelling immediately after the assault was painful, and that her injuries turned into "significant bruising and soreness that persisted for a consequential amount of time." *Id.* at 216.

A similar inference cannot reasonably be drawn from the evidence in this case. Although the state's evidence, if believed, paints a picture of a violent attack, the state failed to adduce any evidence of either the quality or duration of Gregory's pain. That omission is especially conspicuous where, as here, the only evidence in the record with regard

to pain is that of Gregory's testimony squarely *denying* that she experienced any pain as a result of the attack. Gregory's injuries are not commensurate with those of the victim in *Guzman,* nor do the photographs of Gregory's face and neck, taken on the day of the attack and the following day, allow any nonspeculative inferences about the nature and degree of pain that she may have experienced. Thus, although one could reasonably infer that Gregory suffered *some* pain as a result of the altercation, the record simply lacks evidence from which one could reasonably infer that her pain was substantial or lasting. *See Lewis,* 266 Or App at 529-30 (concluding that, "even if a trier of fact could infer that the hair-pulling caused the victim *some* pain, there is no evidence in the record that the degree or duration of the pain was sufficient to constitute 'substantial pain'" (emphasis in original)); *Rennells,* 253 Or App at 586 ("[A]lthough the evidence—a bruise lasting several days—may be sufficient to infer that the victim suffered *some* pain as a consequence of the kicking incident, it is not sufficient to infer that she suffered *substantial* pain." (Emphases in original.)).

In sum, we conclude that the evidence was insufficient for a rational factfinder to find that defendant had caused Gregory "substantial pain," and the trial court erred when it ruled that the state could proceed under both theories of "physical injury." That error was harmful because, in the absence of a special verdict form, it created a risk that some jurors could vote to convict defendant based on a theory of "physical injury" that is unsupported by the evidence.

Conviction for fourth-degree assault reversed and remanded; otherwise affirmed.