DeVORE, J.
*813 Defendant appeals a judgment of conviction for several offenses, including fourth-degree assault constituting domestic violence, ORS 163.160(3), and first-degree burglary constituting domestic violence, ORS 164.225. In his first of three assignments of error, defendant contends that the trial court erred in refusing to provide a special jury instruction defining "substantial pain" in relation to the assault charge. Next, he disputes the court's denial of his motion to exclude evidence. Finally, he assigns error to the court's instruction that the jury could reach a nonunanimous verdict. As to the first issue, we agree that defendant was entitled to a jury instruction that "fleeting" pain is not substantial, and we conclude that the failure to give the instruction was not harmless. We reject defendant's other assignments of error without discussion. As we will explain, we reverse and remand as to assault and burglary and remand for resentencing; otherwise, we affirm.[1]
"In reviewing the trial court's refusal to give a requested instruction, we view the record in the light most favorable to establishment of the facts necessary to require that instruction." State v. Egeland , 260 Or. App. 741, 742, 320 P.3d 657 (2014) (citing State v. Black , 208 Or. App. 719, 721, 145 P.3d 367 (2006) ). We recount the facts in light of that standard.
In the course of a domestic dispute, defendant grabbed the victim, shook her, and struck her in the head with his hand. During the dispute, a screwdriver from defendant's pocket pressed into the victim's abdomen. Several people witnessed the attack, including the victim's six-year-old child. The victim obtained a restraining order against defendant the day after the incident, but she terminated it two weeks later.
Defendant was charged with nine offenses, including assault, burglary, and strangulation. At trial, the state *814 called two witnesses who saw defendant attack the victim. Both recalled him "choking" and hitting her. One claimed to have observed defendant "punching" the victim in the head, but the other said that she "couldn't really tell" whether he used an "open hand" or a "[c]losed" fist. One witness said that defendant "push[ed]" a screwdriver into the victim's side. Neither witness observed the victim crying, and the victim did not appear to be holding her head or throat as if either hurt.
Two police officers testified. The responding officer recalled talking to the victim at the scene of the incident. According to that officer, the victim reported defendant having "placed his hands around her neck" for "about five to ten seconds" and having "slapped her once in the face[.]" An investigating officer recalled meeting with the victim five days later. At that time, the victim said that her throat had been sore. She rated her pain on a scale of one-to-10, indicating that it was a "two" on the night of the attack *1128 and a "six" the next day. The victim said that her pain persisted for two days and that her neck "was still hurting," but not as much as before.
On the witness stand, the victim acknowledged that she and defendant had argued, but she generally disagreed with or denied the state's characterizations of defendant's aggression, her fear, and her injuries. The state asked the victim whether she had told police that defendant had "placed both of his hands around [her] neck[,]" whether she said that defendant "slapped [her] on the left side of [her] face[,]" and whether she remembered saying that "defendant grabbed a screwdriver, was jabbing it into [her] left side near [her] stomach which later caused a bruise[.]" The victim replied that defendant shook her rather than strangled her and that he may have grabbed her by her shoulders instead of the neck. The victim said that she "never felt any strike marks" and did not believe that, amidst the commotion, she had been punched. The victim said that defendant had not pushed the screwdriver into her side but, rather, the screwdriver fell out of defendant's pocket and "poked" her during a "scuffle." The victim confirmed that she had rated her neck pain on a 10-point scale, but then claimed that, in *815 actuality, her neck "was not sore at all," and she was merely conveying to officers that her neck had "tensed up."
The state introduced evidence to impeach the victim's testimony. That included photographs depicting bruises and red marks on the victim's neck, face, and abdomen, as well as call records and text messages between the victim and defendant. The state also presented the victim's petition for a restraining order, from which it read into the record a violent description of the incident of abuse that contradicted the victim's testimony.
In response, the victim testified that she had previously exaggerated defendant's conduct. She said that she felt compelled to petition for a restraining order against defendant because she was afraid that, had she not done so, the state may have taken custody of her child. The victim also said that she did not want to press charges, but officials assured her that doing so would ensure that defendant received needed substance abuse treatment. She explained, "He just needs help."
After the testimony concluded, the court and counsel reviewed proposed jury instructions. As to the assault charge, the parties agreed to use uniform jury instructions that, in relevant part, instructed that the state must prove that defendant caused "physical injury" to the victim, and defining physical injury as "an injury that impairs a person's physical condition or causes substantial pain." In addition, defendant requested a special instruction:
"Substantial pain means considerable pain. The term substantial pain refers to the degree and duration of pain suffered by the victim. To be substantial, pain must be ample or considerable. The requirement excludes pain that is fleeting or inconsequential."
The state opposed the special instruction, contending that the uniform instruction for physical injury was sufficient. Defendant argued that his instruction would clarify a word within the uniform instruction. The court denied defendant's request, recommending that, if counsel wanted to include the additional language, she submit it for consideration to the committee tasked with writing uniform jury instructions.
*816 The parties' closing arguments resembled their approach to the jury instructions. As to the assault charge, the state argued that defendant had attacked the victim, strangled her, and shaken her, as evidenced in witness testimony and photographs of the victim's injuries. The state discussed the evidence of the strangulation and the victim's pain:
"[Defendant] put both his hands around her throat, strangled her[.] * * * [S]he didn't want to tell you it occurred or that she had any trouble breathing or swallowing, but she did tell officers that, and she rated her pain a two that night and then said that it was a six or seven two days after that. It was still painful when officers saw her on May 3rd.
"Whether or not there was petechiae present * * * he strangled her[.]"
*1129 In his argument, defendant distinguished lesser contact, arguing that the state had failed to prove that he caused a physical injury:
"Going to the Assault IV, what happened? There are all kinds of charges that could have been in (inaudible) here and that could have been brought here. Harassment, which is offensive physical contact. It's intended to be less than an assault, like spitting on someone, slapping someone across the face, giving them a shove, not nice contact. They didn't charge that. They charged assault. Assault is a specific crime meaning that you caused substantial pain or impairment of physical condition.
"Now, [the victim] says she was slapped. [A witness] says she was punched three times in the face by a pretty good sized guy and that her head moved to the side each time he punched her in the face with a closed fist. And there's no evidence of any pain. There's no evidence of any injury. I would suggest to you that slap is probably what he did. It's a terrible thing. If they charged harassment, I wouldn't-I'd be telling you the same thing I told you on the criminal mischief charge. That's what he did. That's what you should find him guilty of. * * *
"If you find that she didn't suffer substantial pain from his punching her, then that's not assault. And when I think about substantial pain, well, substantial, that's a lot. It's not something mild. It's substantial pain. It's not-They *817 don't say just pain, and they really don't say discomfort. They say substantial pain, a lot of pain."
In rebuttal, the state still did not explicitly choose a particular theory of assault. It underscored that defendant "strangled" the victim, "slapped her in the face," "punched her in her head," and "jabbed a screwdriver into her side," and it cited the photographs and the victim's neck soreness as evidence of substantial pain.
The jury ultimately found defendant guilty of five offenses, including fourth-degree assault constituting domestic violence and first-degree burglary constituting domestic violence.[2] The burglary offense was predicated upon defendant entering or remaining in the residence with the intent to commit assault.
On appeal, defendant challenges the trial court's refusal to give the special jury instruction defining substantial pain. He argues that the instruction would have helped the jury by explaining that the term "substantial" refers to the degree and the duration of pain. Defendant contends that the instruction is necessary whenever evidence supports the inference that the victim suffered only fleeting pain. He argues that such evidence existed here, suggesting that the victim was slapped, shaken, and inadvertently poked, rather than punched, choked, and deliberately jabbed.
The state argues that the instruction was unnecessary because the evidence raised no question as to whether the victim's pain was merely fleeting. Also, the state argues that defendant failed to demonstrate that the instruction would have supported his theory of the case, because defendant gave no opening argument, presented no evidence, and otherwise failed to make known any theory of insubstantial pain. Finally, the state argues that any error was harmless because the case presented the jury only a choice between substantial pain or no pain at all.
We review a trial court's refusal to give a requested jury instruction for legal error. Egeland , 260 Or. App. at 742, 320 P.3d 657.
*818 Generally, a "criminal defendant is entitled to have the jury instructed in accordance with his or her theory of the case if the instruction correctly states the law and there is evidence to support giving it." State v. Roberts , 293 Or. App. 340, 341, 427 P.3d 1130 (2018) (quoting State v. McNally , 361 Or. 314, 320, 392 P.3d 721 (2017) ). A trial court has the obligation to "state to the jury all matters of law necessary for its information in giving its verdict." ORCP 59 B; ORS 136.330 (extending ORCP 59 B to criminal trials). However, a trial court may refuse a *1130 request for an instruction when its substance is "covered fully by other jury instructions given" or when the instruction is "not necessary * * * to explain the particular issue or point of law to the jury." State v. Harryman , 277 Or. App. 346, 356, 371 P.3d 1213, rev. den. , 360 Or. 401, 381 P.3d 843 (2016) (quoting Hernandez v. Barbo Machinery Co. , 327 Or. 99, 106, 957 P.2d 147 (1998) ).
We begin by considering whether the instruction that defendant sought correctly stated the law. Recently, in Roberts , we answered that question in the affirmative when considering a jury instruction nearly identical to that which defendant requested.[3] We determined that our case law supports the assertion that "substantial" refers to both the degree of pain, which must be "ample" or "considerable," as well as the duration, which cannot be "fleeting." Roberts , 293 Or. App. at 345, 427 P.3d 1130 (citing State v. Long , 286 Or. App. 334, 340-41, 399 P.3d 1063 (2017) and State v. Guzman , 276 Or. App. 208, 212, 366 P.3d 816 (2016) ). As in that case, defendant's instruction here is legally correct.
We next consider whether the record contained evidence to support defendant's theory that the victim suffered only "fleeting" or "insubstantial" pain. That is, we ask whether the issue of duration was before the jury. We conclude that it was. Some testimony suggested that the victim showed no symptoms of pain immediately after the incident, much less days later. The victim said that she "never felt any strike marks." She disputed the soreness in her neck and said that she merely meant it had "tensed *819 up" when she indicated that it had increased on a ten-point scale. Witnesses to the attack testified that they had not seen the victim crying or acting like she was in pain. The state also offered evidence of multiple means of injury that could be associated with pain of varying durations. Some evidence suggested that defendant slapped the victim, but never punched, choked, jabbed, or otherwise engaged in conduct that would cause pain that was more than fleeting. An observer said that defendant may have used an open hand to strike the victim, the responding officer reported that defendant "slapped" the victim once in the face, and the victim said that she did not believe that she had been punched. The victim also denied other aggression. She claimed that defendant only shook her, possibly by the shoulders, and that the screwdriver "poked" her inadvertently during a "scuffle."
From that evidence, a factfinder could conclude that the state failed to prove beyond a reasonable doubt that the victim suffered anything but momentary pain. See, e.g. , id. (a factfinder could conclude, from testimony that a mark on the victim's face may have come from a "very minor injury" that would not cause substantial pain, that the victim had not suffered substantial pain from a slap, "perhaps based on the understanding that pain associated with the slap was transitory"); State v. Johnson , 275 Or. App. 468, 469-70, 364 P.3d 353 (2015), rev. den. , 358 Or. 833, 370 P.3d 504 (2016) (evidence that the victim felt a "sting" when the defendant slapped her was insufficient to support a finding of substantial pain). At least some evidence raised the issue of duration and supported defendant's requested instruction.
The related question is whether the requested instruction was unnecessary. In Roberts , we concluded that a special instruction was necessary when the record contained evidence from which a factfinder could infer that the victim's pain was "fleeting," and when other instructions failed to fully cover that substance. 293 Or. App. at 348-49, 427 P.3d 1130. In that case, the parties agreed to the same uniform jury instructions on physical injury as given here. Id. at 343, 427 P.3d 1130. We determined that it was unnecessary to further instruct jurors on the definition of "substantial" insofar as it described the degree of pain, as the word "commonly is understood to include concepts like 'ample,' 'considerable,'
*820 and not 'inconsequential,' " and simply supplying "common synonyms or antonyms" would "not change the meaning of *1131 the term." Id. at 347, 427 P.3d 1130. In a qualitative sense, such additional language about the degree of pain provided nothing new.
We concluded, however, that an instruction telling the jury that "substantial" encompasses a durational component-that the pain cannot be only momentary-was required under the circumstances. Id. at 347-49, 427 P.3d 1130. We reasoned that it was "unlikely that jurors would understand, without further instruction, that even pain that is significant in degree generally is not 'substantial pain'-at least, not for purposes of the element of 'physical injury'-if it is only fleeting, i.e. , not substantial in duration ." Id. at 347, 427 P.3d 1130 (emphasis in original). The uniform jury instruction on physical injury did not adequately address that particular point, and, as a result, further instruction was necessary. Id. at 348-49, 427 P.3d 1130.
Likewise, here, the durational component of defendant's requested instruction was necessary. This case involves the same uniform instructions on physical injury and a request for a nearly identical instruction on substantial pain as in Roberts . Because the record supports an inference that the victim suffered pain that was only momentary, it was necessary to instruct the jury that pain cannot be substantial if it is fleeting. The trial court erred in refusing to give defendant's requested instruction.
For a different reason, the state insists that the special instruction was still unnecessary. The state argues that defendant was not entitled to the instruction because he failed to establish that his theory of the case was that the victim had pain that was only fleeting. Although the state is correct that, in Roberts , it was the defendant who offered the evidence that supported the jury instruction, nothing required that to be so; the evidence could have just as easily come from the state. After all, criminal defendants bear no burden of proving their innocence. See, e.g. , ORS 10.095(6) ("[I]n criminal cases a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond reasonable doubt[.]"). Simply *821 put, Roberts stands for the proposition that a defendant is entitled to an instruction defining the durational component of substantial pain when the record supports it and when other instructions fail to fully cover that concept. From our review of the proceedings, we are satisfied that defendant sufficiently raised his theory.
Our inquiry does not end with the conclusion that the trial court erred in refusing to give defendant's requested instruction. "Instructional error, like any other error, does not justify reversal unless the error was prejudicial." Roberts , 293 Or. App. at 349, 427 P.3d 1130 (quoting State v. Guckert , 260 Or. App. 50, 60, 316 P.3d 373 (2013), rev. den. , 354 Or. 840, 326 P.3d 77 (2014) ). Accordingly, we will affirm a judgment despite the trial court's failure to give the requested instruction if little likelihood exists that the error affected the verdict. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) (describing the standard, under Article VII (Amended), section 3, of the Oregon Constitution). The focus of our inquiry "is on the possible influence of the error on the verdict rendered, not whether this court, sitting as factfinder, would regard the evidence of guilt as substantial and compelling." Id . We ask whether the instructional error could have "created an erroneous impression of the law in the minds of the jurors which affected the outcome of the case." Egeland , 260 Or. App. at 746, 320 P.3d 657.
In the first of two arguments, the state contends that the court's failure to give the substantial pain instruction was harmless because the record would not have supported the jury finding that defendant caused any pain without also finding that pain to be substantial. The state argues that, because the jury found that the victim experienced pain, it necessarily found that pain to be substantial. The state claims that evidence of the victim's persistent and worsening neck pain was undisputed and, based on that record, the substantial pain instruction would not have made a difference in the jury's deliberations.
We disagree. We are unable to discern whether the jury relied on evidence of the victim's neck soreness to conclude that defendant caused substantial pain. Although *1132 the victim acknowledged that she had rated her pain days *822 after the incident, she disputed the meaning of that rating, explaining that she merely meant that her neck had "tensed up." Accepting the victim's dismissive explanation, the jury still could have convicted defendant, despite the victim's account of insubstantial neck pain. Indeed, at trial, the state alleged multiple types of aggression, including defendant punching the victim, slapping the victim, jabbing the victim with a screwdriver, and grabbing the victim by the throat. The state proffered evidence of all of those things; that evidence included photographs of the victim's injuries and testimony discussing injuries associated with each act. The state presented multiple acts and injuries that occurred and that each could constitute assault. We cannot presume that the jury necessarily found that defendant grabbed and hurt the victim's neck, as opposed to finding that he slapped her face, when it found him guilty of assault. Thus, it is unclear what particular evidence ultimately persuaded the jury and whether that evidence could not have been associated with fleeting pain.
Under these circumstances, we cannot conclude that the instructional error was harmless. With proper instruction, the jury would have known that a slap causing fleeting pain is legally insufficient. Absent such guidance, the jury may have operated with an erroneous impression of what constitutes substantial pain and a physical injury, and that understanding may well have affected the outcome as to the assault count.
In its second argument, the state argues that the court's failure to give the instruction was harmless because defendant's closing argument focused on the victim having no pain, as opposed to some fleeting pain. Again, we disagree. Defendant's strategy on the assault charge focused on challenging whether the victim's pain was substantial. Defendant claimed that "there [was] no evidence of any pain" as a means for showing that "a slap is probably what [defendant] did." Defendant cited the absence of pain after the attack to demonstrate that he did not engage in the type of conduct that could cause the pain necessary to constitute a physical injury for an assault. His argument that he slapped the victim suggested that the victim's pain was transitory. Consequently, an instruction on the durational *823 component of substantial pain may have been helpful to the jury in determining whether the victim sustained a physical injury. For both reasons, we cannot conclude that the court's failure to provide the requested instruction had little likelihood of affecting the verdict.
Because the instructional error was not harmless with respect to the assault conviction, it follows that the error may have affected the burglary verdict. To prove first-degree burglary constituting domestic violence, the state had to show that defendant knowingly entered or remained unlawfully in the residence where the attack occurred with the intent to commit the assault . If the jury had found that defendant engaged in conduct that caused only fleeting pain to the victim, that could have affected its finding that defendant intended to commit assault when entering or remaining in the residence in the first instance. For that reason, our conclusion as to the assault verdict requires reversal of the burglary verdict, as well.
In sum, defendant was entitled to an instruction telling the jury that, to find a physical injury for an assault charge, the jury must find the pain to be substantial in duration, that is, not fleeting. No other instruction adequately covered that substance. The instructional error was not harmless, and reversal is required for the two offenses, directly or indirectly, pertaining to physical injury.
Judgment of conviction on Counts 1 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

After the initial briefing was complete, defendant filed a supplemental brief that included supplemental assignments of error raising as plain error the trial court's instructions to the jury that it could return nonunanimous verdicts. Defendant contends that the Sixth and Fourteenth Amendments to the United States Constitution require unanimous jury verdicts. We reject those arguments on the merits without further discussion.

The jury also convicted defendant of three other offenses: felony strangulation, ORS 163.187(4) ; unlawful possession of methamphetamine, ORS 475.894 ; and second-degree criminal mischief, ORS 164.354.

The instruction in Roberts stated: "Substantial pain encompasses both the degree and duration of pain suffered by the victim. Fleeting pain is insufficient. * * * To be substantial, the pain must be ample or considerable and not fleeting or inconsequential." 293 Or. App. at 343, 427 P.3d 1130.