Argued and submitted March 4; reversed as to Count 1, reversed and remanded as to Count 2 December 8, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOSE ALONSO CURIEL,
*Defendant-Appellant.*

Lane County Circuit Court
18CR72114; A171263

504 P3d 629

Defendant appeals a judgment of conviction for fourth-degree assault (Count 1), ORS 163.160, entered after the trial court merged the jury's verdicts finding him guilty both of that charge and harassment constituting domestic violence (Count 2), ORS 166.065. On appeal, he assigns error first to the trial court's denial of his motion for judgment of acquittal on the fourth-degree-assault charge on the grounds that the evidence was insufficient to establish all elements required by ORS 163.160. Second, defendant assigns error to the trial court's admission of certain out-of-court statements under OEC 803(26), the domestic violence exception to the hearsay rule. *Held*: The court erred in denying the motion for a judgment of acquittal because the evidence was insufficient to support a finding of physical injury. The court's admission of hearsay statements was also in error because the state did not demonstrate that those statements met the requirements for admission under the OEC 803(26) hearsay exception. That error was not harmless.

Reversed as to Count 1; reversed and remanded as to Count 2.

Bradley A. Cascagnette, Judge.

Nora Coon, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Kirsten M. Naito, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed as to Count 1; reversed and remanded as to Count 2.

## LAGESEN, P. J.

Defendant appeals a judgment of conviction for fourth-degree assault (Count 1), ORS 163.160, entered after the trial court merged the jury's verdicts finding him guilty both of that charge and harassment constituting domestic violence (Count 2), ORS 166.065. On appeal, he assigns error to the trial court's denial of his motion for judgment of acquittal on the fourth-degree-assault charge, and to the trial court's admission of certain out-of-court statements by the victim under OEC 803(26), the domestic violence exception to the hearsay rule. We conclude that the trial court erred in both respects and, further, that the error in admitting the challenged statements was not harmless. Accordingly, we reverse the conviction on Count 1, and reverse and remand with respect to Count 2.

Except as noted the facts are not disputed. Defendant and RA are married. In October 2019, RA called 9-1-1 to report that defendant had hit her five to six times and kicked her in her side. Springfield Police Officers Harbert and Bazer, along with Sergeant Grice, responded. Bazer, who was joined by Grice at some point, interviewed RA. At the time, RA "was visibly upset. She would cry off and on throughout [the] conversation." She reported that defendant struck her face five to six times with an open hand, which caused her to feel a "stingy shock." At the time of the interview, she reported that her "jaw continued to pop."

Bazer wrote up the police report for the incident. It included the statements that the victim made about defendant's conduct, in addition to statements that she made about their relationship and other aspects of defendant's conduct:

"[RA] told me that [defendant] is very controlling and limits her contact with friends. She stated that she only has one friend now that she has been with [defendant]. [RA] told me he frequently goes through her phone and keep[s] tabs on where she is. While I was at the apartment I noticed [RA] had a dog and asked her if [defendant] is ever aggressive towards the dog and she told me that if the dog misbehaves he will kick it. [RA] told me that [defendant] has been abusive towards her in the past but she keeps hoping he will change.

"[RA] told me that when [defendant] drinks he becomes aggressive. She told me that he will start fights with random people and will also become aggressive with her. She told me that most of the previous incidents have been when he is drinking. She told me that she has tried to get him to go to counseling but he refuses to go * * *. She told me her mother was abused when she was growing up and that's why she thinks she lets him get away with it."

Before trial, defendant filed a motion *in limine* to exclude RA's statements to Bazer. Defendant argued that those statements were inadmissible hearsay and were not otherwise admissible under OEC 803(26), the domestic violence exception to the hearsay rule. Specifically, defendant argued that RA's statements did not have sufficient indicia of reliability and that some of RA's statements did not describe the incident. Additionally, defendant asserted that some of those statements constituted inadmissible evidence of defendant's prior bad acts. The state responded by arguing that the statements were relevant and admissible to rebut a claim of self-defense by defendant, and that it fell within the domestic violence hearsay exception.

The trial court granted defendant's motion in part and denied it in part. The court excluded the statements about the dog, about fights with random people, and about RA's mother, concluding both that those statements did not "further explain[] this act of domestic violence and [were] overly prejudicial to the Defendant." The court ruled that the remainder of the statements were admissible under OEC 803(26), including: "that [defendant] is very controlling and limits [RA's] contact with friends"; that RA "only has one friend now that she has been with [defendant]"; that defendant "goes through her phone and keep[s] tabs on where she is"; that defendant "has been abusive towards her in the past but she keeps hoping he will change"; that defendant is aggressive when he drinks and that most previous incidents had been when defendant was drinking; and that defendant has refused counseling.

During the trial, Bazer recounted RA's statements about defendant's conduct, in addition to the other statements that the trial court had ruled admissible. Grice's testimony corroborated Bazer's testimony about RA's statements, adding

that RA said that defendant was possessive and controlling; that defendant goes through her phone; that there was past abuse; that the abuse had been escalating; and that when defendant drinks, he becomes aggressive. Grice explained that RA made these statements in response to Bazer and Grice "mining for information about the relationship."

RA also testified. Consistent with her earlier description of the pain inflicted by defendant being a "stingy shock," she described that "it is like when you hit your funny bone on something and you get that, like, sting and you're like, ow, but then it goes away." She characterized her level of pain as being "2 out of 10" and the duration of the pain as being short, "less than a minute." She denied that her jaw was "popping" during the police interview, explaining that she "touched the side of [her] face to show where [defendant] came into contact with [her] face." She further testified that when Bazer asked if defendant went through her phone, she said "yeah, but we have each other's phone passwords" so it was not "an issue." She also testified that she did not remember saying that defendant can be aggressive.

The jury found defendant guilty on both counts, and the court merged the guilty verdicts and entered a single judgment of conviction on Count 1. Defendant appeals. As noted, he assigns error to the denial of his motion for judgment of acquittal on Count 1 and the admission of certain of the victim's out-of-court statements.

*Judgment of acquittal*. We review the denial of a motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational factfinder could have found all the elements of the charged crime beyond a reasonable doubt. *State v. Casey*, 346 Or 54, 56, 58, 203 P3d 202 (2009).

ORS 163.160(1) defines the crime of fourth-degree assault as "[i]ntentionally, knowingly or recklessly caus[ing] physical injury to another." In turn, ORS 161.015(7) defines the term "physical injury" as "substantial pain" or "impairment of physical condition." Defendant contends that the evidence is insufficient to support a finding that he caused the victim either "substantial pain" or "impairment of physical condition." The state concedes, and we agree, that the

evidence is insufficient to support a finding of physical impairment. The question is whether it is sufficient to support a finding of "substantial pain." We conclude that it is not.

"The phrase 'substantial pain' refers both to the degree and the duration of pain subjectively experienced by a victim." *State v. Long*, 286 Or App 334, 340, 399 P3d 1063 (2017). To qualify, "pain must be ample or considerable, and not fleeting or inconsequential." *Id*. at 341 (internal quotation marks omitted). Here, the direct evidence of the victim's pain level—that it resulted in a "stinging shock"—does not allow for a finding that her pain rose to the qualifying level. *State v. Johnson*, 275 Or App 468, 469, 364 P3d 353 (2015), *rev den*, 358 Or 833 (2016) (accepting state's concession that the victim's testimony that the defendant's slap caused her to feel a "sting" was insufficient to demonstrate "substantial pain"). Although direct evidence of a victim's pain is not required to support a finding of "substantial pain," when the only evidence is circumstantial, it must be reasonable—that is, nonspeculative—to infer that the pain experienced by the victim was, in fact, "ample or considerable." *Long*, 286 Or App at 341-42. In this instance, it would be speculative to infer from the circumstantial evidence that defendant's assault of the victim resulted in pain greater than what the victim described. The only evidence about the assault is the victim's statements that defendant struck the victim five or six times with an open hand and kicked her. There is no direct evidence about how hard defendant struck or kicked the victim. The only circumstantial evidence on that point is the evidence that the victim's jaw continued to "pop" as she spoke with police, something that allows for the inference that defendant hit her hard enough to cause that effect but that does not, in any nonspeculative way, speak to the quality of the pain that the victim experienced. There also is no evidence that the hitting or the kick resulted in any marks, bruises, or other injury that would make it reasonable to find that the victim's pain was greater than how she described it. That is something that differentiates this case from others in which we have concluded that the circumstantial evidence was sufficient to support a finding of substantial pain. *See State v. Soto-Martinez*, 315 Or App 79, 81,

499 P3d 108 (2021). For that reason, we reverse defendant's conviction for fourth-degree assault.

*Hearsay exception for statements related to domestic violence.* As a matter of procedure, although we have reversed defendant's conviction for fourth-degree assault, the only conviction entered, we must address defendant's challenge to the admission of certain of the victim's hearsay statements. That is because the jury also found defendant guilty of harassment constituting domestic violence, although that verdict was merged with the fourth-degree assault verdict. If the court erred, and the error affected the verdict on that charge, then defendant would be entitled to a new trial on that count. Otherwise, on remand, the proper course would be to enter judgment of conviction on the jury's harassment verdict.

The particular issue before us is whether the trial court erred in concluding that certain statements that the victim made to the police officers responding to her 9-1-1 call were admissible under OEC 803(26), the domestic violence exception to the general bar on the admission of hearsay in a trial. That provision states, in relevant part:

"The following are not excluded by [OEC 802, the rule against hearsay], even though the declarant is available as a witness:

"* * * * *

"(26)(a)   A statement that purports to narrate, describe, report or explain an incident of domestic violence, as defined in ORS 135.230, made by a victim of the domestic violence within 24 hours after the incident occurred, if the statement:

"(A)   Was recorded, either electronically or in writing, or was made to a peace officer * * *; and

"(B)   Has sufficient indicia of reliability.

"(b)   In determining whether a statement has sufficient indicia of reliability under paragraph (a) of this subsection, the court shall consider all circumstances surrounding the statement. The court may consider, but is not limited to, the following factors in determining whether a statement has sufficient indicia of reliability:

"(A)   The personal knowledge of the declarant.

"(B)   Whether the statement is corroborated by evidence other than statements that are subject to admission only pursuant to this subsection.

"(C)   The timing of the statement.

"(D)   Whether the statement was elicited by leading questions."

On appeal, defendant assigns error to the trial court's admission of the following statements by the victim, as introduced through Bazer:

- That defendant "is very controlling and limits her contact with friends."

- That the victim "only has one friend now that she has been with [defendant]."

- That defendant "frequently goes through her phone and keep(s) tabs on where she is."

- That when defendant "drinks he becomes aggressive."

- That the victim has "tried to get him to go to counseling but he refuses to go."

In defendant's view, those statements were not admissible under OEC 803(26) because the things they described did not occur within the 24-hour period preceding the victim's report to police. In other words, defendant reads OEC 803(26) to be quite narrow, allowing the admission only of those statements that directly related the facts of a specific incident of domestic violence occurring within the 24-hour period prior to the statements. The state urges a broader interpretation, contending that the 24-hour limitation does not "place a time limitation of what the victim was describing," but, instead, simply requires that any statements that otherwise "purport[] to narrate, describe, report or explain" a domestic-violence incident be made within 24 hours of the incident. The parties also argue extensively over the meaning of the word "explain," and whether the challenged statements, which do not, on their face, directly describe the incident, can nonetheless be ones that "explain" the incident.

We review a trial court's determination that hear-say evidence is admissible for legal error. *State v. Lobo*, 261 Or App 741, 751, 322 P3d 573, *rev den*, 355 Or 880 (2014). Whether the trial court properly admitted the disputed hear-say evidence under OEC 803(26)(a) depends on the interpre-tation of that rule, which is codified as ORS 40.460(26)(a). To determine a statute's meaning, we apply Oregon's well-established framework for statutory interpretation and examine its text and context, as well as any relevant legis-lative history with which we have been supplied or that we have obtained on our own. *See State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (outlining the methodology).

Although the parties' arguments have focused largely on the OEC 803(26)'s requirement that any state-ments sought to be admitted be made by a victim within 24 hours of the incident in question, and what bearing that time limit has on the meaning of the word "explain," we con-clude that the ordinary meanings of the words "purport" and "explain" sufficiently communicate the legislature's intended standard. We start and largely end with the text, because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Id.* at 171 (inter-nal quotation marks omitted).

As noted, OEC 803(26)(a) allows for the admission of a hearsay "statement that purports to narrate, describe, report or explain an incident of domestic violence, as defined in ORS 135.230, made by a victim of the domestic violence within 24 hours after the incident occurred," if certain other conditions are met. As framed by the parties' argu-ments, and the nature of the particular statements at issue, which do not in any readily apparent way "narrate, describe [or] report" the incident in question, the issue before us is whether the challenged hearsay statements are admissi-ble as statements that "purport[] to *** explain" an inci-dent of domestic violence, in particular, whether they are statements that "purport[] to *** explain" the incident that formed the basis for the charges in this case.

Where, as here, the legislature uses words of com-mon usage, we "ordinarily presume[] that [the] legislature

intended [the] terms to have plain, natural and ordinary meaning." *Gaines*, 346 Or at 175 (citation omitted). According to *Webster's Dictionary*, the verb "purport" in this context ordinarily means "to convey, imply, or profess outwardly (as meaning, intention, or true character) : have the often specious appearance of being, intending, claiming (something implied or inferred) : IMPART, PROFESS[.]" *Webster's Third New Int'l Dictionary* 1847 (unabridged ed 2002). Applying this definition in the context of OEC 803(26), this means that the exception authorizes the admission into evidence of statements that "convey, imply or profess outwardly" a narration, description, report, or explanation of a qualifying incident of domestic violence.

Having identified the meaning of the word "purport," we turn to the word "explain." According to *Webster's*, the ordinary meaning of the word "explain" in this context is "to give reason for or cause of : account for <was unable to ~ his strange conduct>." *Id.* at 801.

Taken together, then, a statement that "purports" to "explain" an incident of domestic violence is one that "convey[s], impl[ies] or profess[es] outwardly" the giving of a reason for or cause of or "account[ing] for" an instance of domestic violence occurring within the previous 24 hours.

We have examined the context of the provision, as well as the legislative history, and do not see any indication that the legislature intended its chosen words to convey a different meaning other than the ordinary meaning.

Applying that standard here, the trial court erred in admitting the challenged statements. Those statements do not, on their face, "convey, imply or profess outwardly" the "giv[ing] [of a] reason for or cause of" or otherwise "account[ing] for" the incident that led to the charges against defendant. On their face, the statements appear disconnected from the particular incident, and the factual foundation laid by the state in support of the admission of those statements does not allow the inference that they are statements that "give reason for or cause of" or otherwise "account for" the incident in question.

We can envision circumstances in which the record would permit a foundational factual finding that a statement that, on its face, did not address a particular incident was, in fact, one that implied or conveyed a reason or cause for, or otherwise accounted for, a particular domestic violence incident. For example, in some factual contexts, it might be reasonable to infer that a statement that a defendant was controlling was a statement that implied or conveyed a reason for, cause of, or accounting for, a particular domestic violence incident. In this case, however, the evidence developed pretrial does not support that inference and the evidence developed at trial tends to contradict that inference. That evidence tends to suggest, if anything, that the challenged statements did not state or imply a cause or reason for the incident in question but, instead, may have been elicited by general questions from the officers about the nature of the parties' relationship that did not address the incident in question. Grice testified that while interviewing the victim, Bazer and he "both were asking questions about the dynamic of the relationship," and that one of those questions was "Is he possessive or controlling?" On remand, the state may be able to lay a sufficient factual foundation for the admission of some or even all of the challenged statements; however, on this record, it is not reasonably inferable that the statements convey or imply a cause of, reason for, or account for, the incident at issue. Consequently, the admission of the statements was in error.

One last thing remains. The state argues that even if the statements were admitted erroneously, the error was harmless. We disagree. An error is harmless if there is "'little likelihood' that the erroneously admitted evidence 'affected the verdict.'" *See State v. Szoke*, 212 Or App 491, 492, 157 P3d 1239 (2007) (citing *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003)). Here, given the nature of the evidence in question, which portrayed defendant in a highly negative light, we cannot say there is little likelihood that the trial court's error in admitting it did not affect the jury's verdict on the harassment charge.

Reversed as to Count 1; reversed and remanded as to Count 2.