Submitted March 30, affirmed August 17, 2011, petition for review allowed February 9, 2012 (351 Or 586)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**BRUCE LYNN PIPKIN,**
*Defendant-Appellant.*

Lane County Circuit Court
200904318; A142469

261 P3d 60

Peter Gartlan, Chief Defender, and Elizabeth Corbridge Ranweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of one count of first-degree burglary, ORS 164.225, one count of fourth-degree assault, ORS 163.160(3), and one count of menacing, ORS 163.190. His first argument on appeal is that the trial court erred in denying his motion for judgment of acquittal on the assault count because the record did not contain evidence that he caused physical injury to another, one element of that crime. Defendant also argues that, under *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), *cert den*, 510 US 1013 (1993), the trial court erred in rejecting his request to instruct the jury that at least 10 jurors had to agree on a single factual scenario— either that he entered with the requisite intent, or that he remained with the requisite intent. We conclude that entering and remaining with the requisite intent are two ways to commit the same crime, so no *Boots* instruction was necessary. We affirm.[1]

Because defendant's first argument challenges the denial of a motion for a judgment of acquittal, we begin by summarizing the facts in the light most favorable to the state. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995). Defendant was the victim's ex-boyfriend. Although they were no longer dating at the time of the incident, they remained friends. On the night of the incident, defendant had dinner at the victim's home. Before leaving, he gave her his food stamp card because he had been coming to dinner regularly and he wanted to help her defray the food costs. At approximately 4:00 a.m. the next morning, while the victim was in her bedroom, defendant started pounding on the wall of the apartment and loudly demanding to be let in. The victim looked out her bedroom window and saw defendant reach down and pick up a rock, which he then used to break her bedroom window. Defendant jumped through the window and then proceeded to attack the victim. Screaming that he would "kill her" and "cut her," he hit her in the right eye and cheek, and also tried to stab her

---

[1] In his opening brief, defendant asserts that his appeal "challenges his convictions." Nothing in the brief, however, relates to his conviction for menacing. We therefore affirm that conviction without discussion.

with a knife. The victim's shoulder "popped" as she was trying to get away, and her elbow was hurt. The victim yelled at defendant and told him to leave her home. Instead, he grabbed the victim's purse off her bed and went through it to find the card. The victim eventually found the card in her wallet and gave it back to defendant. Defendant continued screaming at the victim, tried to hit her with a piece of glass from the broken window, and shoved her against a dresser, which hit the middle of her back. On his way out of the apartment, he passed through the living room, where he was confronted by a man who was staying with the victim. Defendant punched the man in the face and ran out the door.

Police arrived shortly thereafter, having been called by the victim's neighbor. They searched the neighborhood but did not find defendant. After a few moments, however, he returned to the apartment, where he was arrested and taken into custody.

On appeal, defendant first argues that there was insufficient evidence from which a jury could have concluded that defendant was guilty of assault in the fourth degree. We review the denial of a motion for judgment of acquittal to determine whether, after viewing the evidence in the light most favorable to the state, a rational trier of fact could find all the elements of the charged crime beyond a reasonable doubt. *Cunningham*, 320 Or at 63.

ORS 163.160(1)(a) provides that a person commits fourth-degree assault if the person intentionally, knowingly, or recklessly causes physical injury to another. ORS 161.015(7), in turn, defines "physical injury" as "impairment of physical condition or substantial pain." Evidence establishing either an impairment of a physical condition or substantial pain will support an assault conviction. *State v. Poole*, 175 Or App 258, 261, 28 P3d 643 (2001).

Defendant argues on appeal, as he did at trial, that his motion for a judgment of acquittal should have been granted because there was not sufficient evidence to allow the jury to find beyond a reasonable doubt that the victim suffered either an "impairment of physical condition" or "substantial pain." *State v. Jones*, 229 Or App 734, 737, 212 P3d 1292, *rev den*, 347 Or 446 (2009) ("Evidence establishing

either an impairment of a physical condition or substantial pain will support an assault conviction."). The term "substantial pain" refers to the degree and duration of the pain suffered by the victim. To be substantial, pain must be "ample," *State ex rel Juv. Dept. v. Salmon*, 83 Or App 238, 241 n 2, 730 P2d 1285 (1986), or "considerable," *State v. Capwell*, 52 Or App 43, 46, 627 P2d 905 (1981). That requirement excludes pain that is fleeting or inconsequential.

In this case, there was evidence that the victim was still in pain at least an hour after the attack and that her injuries were of substantial degree—her eye was swollen, her shoulder "popped" during the attack, and her elbow was hurt, as well as her back. This evidence was sufficient to create a question for the jury about whether the victim suffered substantial pain, and the trial court did not err in denying defendant's motion for judgment of acquittal. *Cf. State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 682, 813 P2d 58 (1991) (headache pain lasting approximately an hour "constitute[d] substantial pain").

Defendant next assigns error to the trial court's denial of his request for a concurrence jury instruction for first-degree burglary.[2] We review a trial court's refusal to give a requested instruction for errors of law in light of the facts that are most favorable to defendant. *State v. Averitt*, 187 Or App 486, 488, 68 P3d 269 (2003).

ORS 164.225 provides, in part:

"(1)   A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:

"* * * * *

"(b)   Causes or attempts to cause physical injury to any person; or

"(c)   Uses or threatens to use a dangerous weapon."

---

[2] Defendant assigns error to both the trial court's denial of defendant's motion to require the state to elect a theory of the case and to the trial court's denial of his request for a concurrence instruction. Because the applicable law is the same for both assignments, we combine them for purposes of review.

In turn, ORS 164.215 provides that "a person commits the crime of burglary in the second degree if the person *enters or remains unlawfully* in a building with intent to commit a crime therein." (Emphasis added.)

Defendant presented evidence at trial that he accidentally broke the victim's bedroom window by knocking too hard, and that the victim invited him into the apartment so the neighbors would not call the police. According to defendant, he and the victim then had an argument, and defendant left once the victim returned his food stamp card. Before and after the jury instructions, defendant asked for a concurrence instruction on the first-degree burglary charge—specifically, citing *Boots*, defendant asked the court to instruct the jurors that he could not be convicted unless 10 or more jurors found that he entered the premises unlawfully, or 10 or more found that he remained on the premises unlawfully, or 10 or more of them found that he did both. The trial court denied the request. Defendant renews his argument on appeal.

Article I, section 11, of the Oregon Constitution provides that, "in the circuit court ten members of the jury may render a verdict of guilty or not guilty[.]" *See also* ORS 136.450(1) (requiring the concurrence of at least 10 of 12 jurors in criminal matters). The jury concurrence requirement ensures that the requisite number of jurors agree on the factual occurrences that constitute a crime. *Boots*, 308 Or at 376-77. A court's failure to give a jury instruction requiring "agreement on all material elements of a charge in order to convict" is error. *State v. Lotches*, 331 Or 455, 472, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001).

However, no jury concurrence instruction is required as to alternative means of proving a single statutory element. For example, in *State v. King*, 316 Or 437, 441-42, 852 P2d 190 (1993), the trial court was not required to give a concurrence instruction. In *King*, the prosecutors[3] presented evidence that the defendants were driving with a blood alcohol level exceeding .08 percent in violation of ORS 813.010(1)(a), and that each defendant was perceptibly impaired by the ingestion of alcohol in violation of ORS 813.010(1)(b). Each

---

[3] Two cases were consolidated for oral argument and the opinion.

defendant requested an instruction to require the jury to agree on which of the driving under the influence (DUII) subsections the defendant had violated. The trial courts declined to give the requested instructions, and the defendants were convicted.

On review, the Supreme Court held that the trial courts did not err in refusing to give the requested instructions, because the two subsections of the DUII statute were merely different ways to commit the same crime:

> "We conclude that ORS 813.010(1)(a) and (b) describe a single offense, DUII. That offense has two elements. A conviction may result if a jury agrees beyond a reasonable doubt that the accused (1) drove a motor vehicle (2) while under the influence of intoxicants. A jury need not agree on which test results (a [blood alcohol] test or field sobriety tests or a combination thereof) established to their satisfaction that the driver was 'under the influence.' "

*King*, 316 Or at 446.

As we explained recently in *State v. Phillips*, 242 Or App 253, 261, 255 P3d 587 (2011),

> "*King*, then, establishes that a concurrence instruction is necessary to avoid the possibility that a jury could return a guilty verdict even though the requisite number of jurors did not agree on which *crime*, if any, the defendant committed, but the instruction is not necessary to prevent a jury from deciding that the defendant is guilty even if the requisite number of jurors did not agree on what particular acts of the defendant constituted an element of a single crime."

(Emphasis in original.) Therefore, the question in this case is: Is first-degree burglary committed by someone who is entering a dwelling with the intent to commit a crime the same crime as first-degree burglary committed by someone who unlawfully remains in a dwelling with the intent to commit a crime? Or are "entering" and "remaining" simply two ways of meeting an essential element of burglary, that is, unlawful presence in a place, having the requisite intent?

The Supreme Court has already answered this question in *State v. White*, 341 Or 624, 147 P3d 313 (2006), albeit

in another context. In that case, the court confronted the question of whether a defendant's guilty verdicts for multiple counts of burglary based on the same incident merged. *Id.* at 626. In doing so, the court needed to "determine if the legislature intended to define a single crime or two separate crimes when it enacted the first-degree burglary statute, and what elements constitute that crime (or crimes)." *Id.* at 638-39. After looking at the statute's legislative history, the court concluded:

> "[T]he legislature included the 'remains unlawfully' wording in the burglary statute solely to clarify that burglary could occur by remaining unlawfully *after an initial lawful entry*. It did not intend to provide that a defendant who commits burglary by entering a building unlawfully commits an additional, separate violation of the burglary statute by remaining in the dwelling thereafter.
>
> "It follows that, although the legislature intended to provide two alternative *ways* to commit the crime of burglary, it did not define those alternatives in a manner that would permit multiple burglary *convictions* to arise out of a single unlawful entry."

*Id.* at 639-40 (emphasis in original; footnote omitted).

Therefore, (1) entering unlawfully and (2) remaining unlawfully are two alternative methods of meeting the "enters or remains unlawfully" element of a single crime—first-degree burglary. For that reason, a concurrence instruction was not necessary in this case.

Affirmed.