Argued and submitted April 29, 2015, affirmed January 27, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ARMANDO GUZMAN,
*Defendant-Appellant.*

Washington County Circuit Court
D132283M; A155005

366 P3d 816

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Susan Reid, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Nakamoto, Judge pro tempore.

NAKAMOTO, J. pro tempore.

## NAKAMOTO, J. pro tempore

Defendant appeals from a judgment of conviction for one count of fourth-degree assault constituting domestic violence. ORS 163.160; ORS 132.586(2).[1] He assigns error to the trial court's denial of his motion for judgment of acquittal (MJOA) based on sufficiency of the evidence to prove that he caused the victim "substantial pain" and, therefore, "physical injury," as required for conviction under ORS 163.160(1)(a).[2] Defendant argues that the jury heard no direct evidence of the degree and duration of the victim's pain and that no rational juror could infer substantial pain from the circumstantial evidence introduced at trial. We disagree and conclude that the trial court did not err in denying defendant's MJOA on the state's "substantial pain" theory. Defendant also assigns error to the trial court's admission of a recorded 9-1-1 call made by the victim, an assignment that we reject without discussion. Accordingly, we affirm.

The victim was or had been defendant's girlfriend. One night, she ran up to two witnesses who were getting out of their car in a store parking lot. The victim attempted to hide behind the male witness, Bruce. Bruce testified that the victim "ran behind" him, "grabbed [his] arm and hid behind [him]," "screaming, 'He's trying to—call 911, he's trying to kidnap me. Help me, help, help me.'" Bruce also saw and interacted with defendant, who was in the parking lot in his car and who stated that the victim had attempted to break into his car.

In Bruce's words, the victim was "absolutely panicked. She was disheveled. She looked like she'd been in a struggle. She had red marks on her face. Her shirt was pulled down and she was terrified." The female witness, McCallum, corroborated Bruce's testimony. She testified

---

[1] "When a crime involves domestic violence," ORS 132.586(2) provides that "the accusatory instrument may plead, and the prosecution may prove at trial, domestic violence as an element of the crime. When a crime is so pleaded, the words 'constituting domestic violence' may be added to the title of the crime."

[2] As relevant to this appeal, ORS 163.160(1)(a) provides that "[a] person commits the crime of assault in the fourth degree if the person * * * [i]ntentionally, knowingly or recklessly causes physical injury to another[.]"

that the victim "had scratches and welts on her arms and her face. Her hair was starting to come out of its ponytail. She had it up and it—it looked like it had been kind of pulled out [of the ponytail] a bit and she was crying hysterically." McCallum also testified that the victim repeatedly said, "'He's trying to take me. He's trying to take me. Help. Help me, he's trying to take me.'" Bruce, who had 15 years of mixed martial arts experience, including first aid experience, testified that, based on that experience, in his opinion, the victim's injuries had been recently inflicted.

Bruce called 9-1-1, and the victim explained to the dispatcher that defendant had attempted to prevent her from leaving his car. She said that defendant "started pushing [her] around" in the car and "wouldn't let [her] go." The recording of that 9-1-1 call was admitted into evidence. Officer Garcia responded to the 9-1-1 call five to 10 minutes later, and, as part of his investigation, he took photographs of the victim's face. Those photographs, which were admitted into evidence, depict bright red scratches on the victim's chin and left cheek; some swelling on both of the victim's cheeks, around both of her eyes, and on the left side of her forehead; and more pronounced swelling on the right side of the victim's forehead, from her eyebrow to her hairline. In some of the photographs, the victim is crying. Bruce, McCallum, and Garcia testified that the photographs accurately depicted the victim at the time that they first encountered her.

The state was unable to produce the victim as a witness at the grand jury hearing or at trial, despite multiple attempts to serve her with subpoenas and a protracted effort to locate her at her work and home and through her family and friends.[3] Thus, the jury did not hear the victim's

---

[3] As a theory explaining the victim's absence at trial, the state relied on the following text message from defendant to the victim's cell phone, regarding a restraining order proceeding approximately one month before the incident at issue in this case:

"'Hey, tomorrow I have court at 12:30 for the order. My attorney said if you don't show up, it will get dismissed and he won't charge me. I won't tell you what to do, * * *, but it would be nice if you didn't show up, so that I * * * can get rid of these problems and I can get my PO to back off a little, then I won't have to do all these classes. * * * [T]hanks, love you.' [The message included a sad face emoticon], and then, 'I never imagined this day.'"

description of the extent of the pain that she experienced. The state did not produce any witnesses who interacted with the victim after the night of the incident or who described the effects of the victim's injuries, such as the level and duration of pain that the victim had suffered.

As noted, "[a] person commits the crime of assault in the fourth degree if the person * * * [i]ntentionally, knowingly or recklessly causes physical injury to another[.]" ORS 163.160(1)(a). "Physical injury" means either "impairment of physical condition" or "substantial pain." ORS 161.015(7). Defendant moved for a judgment of acquittal on the theory that the evidence was insufficient to prove that he caused the victim either "impairment of physical condition" or "substantial pain." The trial court granted his motion as to the "impairment of physical condition" prong but denied it as to the "substantial pain" prong. The latter is the ruling that defendant challenges on appeal.

"In reviewing the denial of a motion for judgment of acquittal based on the sufficiency of the evidence, we 'view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt.'" *State v. Lewis*, 266 Or App 523, 524, 337 P3d 199 (2014) (quoting *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998)). Here, our inquiry is whether a jury could reasonably find that the defendant caused the victim "substantial pain," based on the evidence produced at trial.

That inquiry focuses on whether the evidence would allow a reasonable factfinder to find that the victim subjectively experienced "substantial pain." *See, e.g., State v. Anderson*, 221 Or App 193, 194-95, 189 P3d 28 (2008) (looking to whether child's indication of his "owies" was an indication of his pain). And, our case law reflects our understanding that some types of pain are substantial and some types of pain are *not* substantial, as a matter of law. *See, e.g., State ex rel Juv. Dept. v. Greenwood*, 107 Or App 678, 682, 813 P2d 58 (1991) (headache that lasted an hour or more

---

The victim's motion for a restraining order was dismissed when she did not appear for that hearing.

"constitutes substantial pain" as a matter of law); *Anderson*, 221 Or App at 194-95 (no basis to infer from a "'very tiny'" cut and a "small puncture mark" that those injuries caused substantial pain).

The Oregon Revised Statutes do not further define "substantial pain." As our case law illustrates, we have defined the limits of the "substantial pain" subelement of fourth-degree assault for purposes of an MJOA primarily by describing what "substantial pain" is not. We first construed the term in *State v. Capwell*, 52 Or App 43, 46-47, 627 P2d 905 (1981), where, using a textual analysis, we concluded that the term means "considerable pain," which is something "more than a fleeting sensation." *Id.* In reaching that conclusion, we looked to the contemporaneous *Oxford English Dictionary* definition of "substantial," which is "'(1) [t]hat is or exists as a substance; having a real existence, subsisting by itself, (2) *of ample or considerable amount*, quantity or dimensions, (3) having substance, not imaginary, unreal or apparent only; true, solid real.'" *Id.* at 46 (quoting *Oxford English Dictionary* (compact unabridged ed 1971)) (emphasis added). We also reviewed legislative history and observed that the "legislative history reveals that criminal assault, in whatever degree, requires the infliction of actual physical injury. Petty batteries not producing physical injury do not constitute criminal assault." *Id.* at 47 n 3.

We subsequently clarified that "substantial pain" encompasses both "the degree and duration of pain suffered by the victim." *State v. Poole*, 175 Or App 258, 261, 28 P3d 643 (2001). "Substantial pain" is pain that is not "inconsequential." *Id.* As for the duration of the pain, we have repeatedly emphasized that fleeting pain is insufficient. *See, e.g., State ex rel Juv. Dept. v. Salmon*, 83 Or App 238, 241, 730 P2d 1285 (1986) (observing that the victim "endured more than momentary pain").

As our case law reflects, however, whether the victim suffered "substantial pain" within those legal boundaries is usually a question of fact for the factfinder. And, in the context of an MJOA, whether the evidence was sufficient to submit that question to the factfinder depends upon what that evidence was.

At one end of the spectrum, we have explained that direct evidence that the victim suffered pain that is "substantial," as a matter of law, is sufficient to submit the question to the jury. For example, in *Poole*, we held that the evidence was sufficient to survive an MJOA when the victim testified that a kick from a steel-toed work boot "caused pain that reached 'three or four' on a scale of one to ten," which was "'sharp' for about an hour," and that, "when he moved his wrist, his arm was sore and throbbed for about 24 hours." 175 Or App at 261. We concluded that "the state's evidence, if believed, was sufficient to prove that [the victim's] pain was of substantial duration—it lasted 24 hours—and that it was of substantial degree—it was first sharp, then throbbing." *Id.* Under those circumstances, whether a victim suffered substantial pain is a determination for the jury.

Yet, in many of our "substantial pain" cases, the victim has not testified as to the duration or degree of the pain, as in this case; has provided neutral testimony; or has, in fact, provided direct evidence that the pain was not severe or prolonged. *See, e.g., State v. Rennells*, 253 Or App 580, 586, 291 P3d 777 (2012), *rev den*, 353 Or 410 (2013) ("[I]n response to the prosecutor's question whether it hurt when defendant kicked her, the victim answered, 'No, I was kicking him.'"). In those cases, the set of reasonable inferences that may be derived from the evidence is determinative as to whether the issue is submitted to the trier of fact. "Reasonable inferences from circumstantial evidence are permissible; speculation and guesswork are not." *State v. Bilsborrow*, 230 Or App 413, 418, 215 P3d 914 (2009) (citing *State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004)). The court's role is "to determine—as a matter of law—where the 'sometimes faint' line must be drawn between those inferences that are reasonable and those that are too speculative." *State v. Hennagir*, 246 Or App 456, 461, 266 P3d 128 (2011), *rev den*, 352 Or 33 (2012) (quoting *Bivins*, 191 Or App at 467).

For example, in *Capwell*, we concluded that the evidence was insufficient to survive an MJOA where the defendant kicked the victim in the arm and hit him in the arm with a gas can, the victim testified only that the blows

"'hurt,'" the victim "stated that he did not seek medical treatment after the scuffle and did not miss any work," and there was no evidence of "bruising or any other injury to the victim." 52 Or App at 46-47. We reasoned that, other than the victim's testimony that "he had pain and that it hurt when the defendant struck him," there was "no other evidence of the degree of the pain or that it was anything more than a fleeting sensation." *Id.* at 46. In light of the victim's testimony that he did not seek medical treatment or miss work, and in the absence of evidence of bruising, a reasonable jury could not infer from the description of the impact itself how hard defendant hit the victim, and, therefore, how much and how long the injury likely hurt. *Accord Rennells*, 253 Or App at 586 (in the absence of other evidence about how hard the kick was, "although the evidence—a bruise lasting several days—may be sufficient to infer that the victim suffered *some* pain as a consequence of the kicking incident, it [was] not sufficient to infer that she suffered *substantial* pain" (emphasis in original)).

Similarly, in *Lewis*, 266 Or App at 529-30, we concluded that the evidence was insufficient to survive an MJOA when a witness, during the alleged assault, "heard the victim yell, 'Ouch. Stop it,'" and "heard 'something hitting the wall'" from another room; interacted with the victim the next day and "thought the victim 'appeared kind of beaten down, kind of depressed'"; the victim told the witness "that defendant had pulled out her hair" and showed him "clumps of hair on the floor"; but "the victim did not testify that she felt pain." We reasoned that,

> "[b]ased on the evidence in this case, even if a trier of fact could infer that the hair-pulling caused the victim *some* pain, there is no evidence in the record that the degree or duration of the pain was sufficient to constitute 'substantial pain'—that is, '[t]here is no other evidence of the degree of the pain or that it was anything more than a fleeting sensation.'"

*Id.* (quoting *Capwell*, 52 Or App at 46-47 (emphasis and brackets in *Lewis*)). Implicit in that holding was our conclusion, based on common sense, that hair-pulling generally causes only superficial and short-term pain, and without evidence of a more significant injury, a rational jury could

not reasonably infer substantial pain from the description of the injury itself. *Accord State v. Johnson*, 275 Or App 468, 469-70, 364 P3d 353 (2015) (victim's testimony that "she felt a 'sting' when defendant slapped her" was "insufficient to support a finding of substantial pain"); *State v. Higgins*, 165 Or App 442, 444-45, 998 P2d 222 (2000) (there was "no evidence in the record that the husband experienced any pain" where record supported findings that defendant "shook, scratched, and slapped" her husband, causing him "four to six red scrape marks" on his neck and arm, which did not bleed or require medical attention, and husband did not testify that the injuries hurt); *Anderson*, 221 Or App at 194-95 (evidence was insufficient to survive an MJOA where the defendant shattered a car window, the jury could infer that the glass caused a "'very tiny'" cut and a "small puncture mark" and several accompanying drops of blood on the defendant's infant son's limbs, and the child said "Owie," because, "even assuming that [the child] pointing out his 'owies' was an indication of pain, there [was] no evidence that the pain was of a sufficient degree or duration to be 'substantial,'" nor "any basis to infer from the description of the wounds that they caused substantial pain").

Thus, when the victim does not provide direct evidence of his or her subjective experience of the degree and duration of the pain, as in this case, a trial court ruling on an MJOA must determine whether the evidence would permit a rational jury to reasonably infer that the victim suffered considerable pain and whether the duration of the pain was more than fleeting. Here, despite the absence of the victim's testimony, there is evidence from which a rational juror could infer that the victim suffered substantial pain. The record includes photographs of the victim's injuries and corroborating testimony from witnesses that the injuries looked like they were recently inflicted. Those photographs show bright red scratches and facial swelling that a rational juror could conclude were consistent with the victim's statements to the 9-1-1 dispatcher that defendant "push[ed]" her in the car and "wouldn't let [her] go." A rational juror could infer from the evidence, including the 9-1-1 call, the descriptions of the victim's condition and demeanor by the two witnesses, and the photographs of the victim's injuries, that the

victim physically struggled against defendant and that he scratched and punched her face, or that her face collided with a hard surface in the car during the struggle. And, based on those inferences and the photographs, a rational juror could infer that the victim's injuries involved "ample" or "considerable" pain that was "more than \*\*\* fleeting." *Lewis*, 266 Or App at 527-28. That is, given the basic facts adduced at trial, there is a reasonable probability that the victim's significant facial swelling immediately after the altercation was painful and that her injuries turned into significant bruising and soreness that persisted for a consequential amount of time. *See State v. Pipkin*, 245 Or App 73, 77, 261 P3d 60 (2011), *aff'd*, 354 Or 513, 316 P3d 255 (2013) ("evidence that the victim was still in pain at least an hour after the attack and that her injuries were of substantial degree—her eye was swollen," *inter alia*, "was sufficient to create a question for the jury about whether the victim suffered substantial pain").

This case did not present mere petty battery. The state's evidence was sufficient for a rational juror to find beyond a reasonable doubt that defendant caused the victim "substantial pain," and, therefore, the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.