Argued and submitted January 29; reversed and remanded for entry of judgment omitting the "due in 30 days" requirement, otherwise affirmed October 27, 2021; petition for review denied February 24, 2022 (369 Or 338)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICHAEL DEAN HACKETT,
aka Michael D. Hackett,
*Defendant-Appellant.*

### Coos County Circuit Court
19CR02611; A170402

502 P3d 228

Defendant appeals a judgment convicting him of, among other offenses, second-degree animal abuse (Count 6). He contends that the trial court erred by (1) denying his motion for judgment of acquittal (MJOA) on Count 6, because the evidence was insufficient to show that the victim, a dog named Bosco, experienced a sufficient duration of pain; and (2) imposing fines "due in 30 days"—in addition to a term of incarceration—without determining his ability to pay. *Held*: Based on the testimony adduced at defendant's trial, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Bosco suffered pain that was more than "fleeting" or "momentary"; therefore, the trial court did not err in denying defendant's MJOA on Count 6. Additionally, the state conceded, and the Court of Appeals agreed, that the trial court erred in imposing defendant's fines "due in 30 days" without determining defendant's ability to pay.

Reversed and remanded for entry of judgment omitting the "due in 30 days" requirement; otherwise affirmed.

---

Martin E. Stone, Judge. (Judgment)

Megan Jacquot, Judge. (Supplemental Judgment)

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

TOOKEY, J.

Reversed and remanded for entry of judgment omitting the "due in 30 days" requirement; otherwise affirmed.

**TOOKEY, J.**

Defendant appeals a judgment convicting him of, among other offenses, second-degree animal abuse (Count 6). He contends that the trial court erred when it (1) denied his motion for judgment of acquittal (MJOA) on Count 6; (2) imposed fines "due in 30 days," in addition to a term of incarceration, without determining his ability to pay; (3) ordered that he not be considered for any sentence-modification programs; and (4) instructed the jury that it could return a nonunanimous verdict.

We write to address only defendant's first and second assignments of error.[1] As explained below, we conclude that the trial court did not err in denying defendant's MJOA. We further conclude, and the state concedes, that the trial court erred when it ordered that defendant's fines were "due in 30 days" without determining his ability to pay; accordingly, we reverse and remand on that basis.

"We review the denial of an MJOA to determine whether, after viewing the facts and all reasonable inferences in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Colpo*, 305 Or App 690, 691, 472 P3d 277, *rev den*, 367 Or 290 (2020). And we "review a claim that the sentencing court failed to comply with the requirements of law in imposing a sentence for errors of law." *State v. Capri*, 248 Or App 391, 394, 273 P3d 290 (2012).

## I.   FACTUAL BACKGROUND

The relevant facts are undisputed. Defendant was charged with second-degree animal abuse, ORS 167.315, based on conduct involving his dog, Bosco.[2] At defendant's

---

[1] As for defendant's remaining assignments of error, we reject as unpreserved his claim regarding sentence-modification programs. Likewise, we reject as unpreserved his claim about the nonunanimous jury instruction and do not exercise our discretion to review it for the reasons set forth in *State v. Dilallo*, 367 Or 340, 348-49, 478 P3d 509 (2020).

[2] The record indicates that the state's witnesses testified about two separate incidents, approximately 30 minutes apart, both of which involved defendant allegedly abusing Bosco. Because the second-degree animal abuse charge (Count 6) was based only on the second incident, we focus on the facts relevant to that incident.

jury trial, the evidence relevant to that conduct came primarily from two eyewitnesses for the state: a mother, who lives in a house "on the corner of a major highway," where the conduct at issue occurred; and her daughter, who was visiting her mother when that conduct occurred.

The daughter testified that she was in town for a hair appointment and stopped to visit her mother. She was in the kitchen with her mother when she "heard a dog yike"—a sound she described as a dog communicating "'help,' or 'I'm in pain,' or 'ouch.'" She "thought a dog got hit right by the road," because she had heard a similar "yike" on a previous occasion when a dog "got hit by a car." Curious, she exited the house, descended a flight of stairs, and walked through the backyard toward the highway. There, she saw "a bicycle and [defendant] and a dog" along the highway. The dog, Bosco, was "yiking and whimpering" and "laying in submission," while defendant "was kicking the dog" "very hard." Briefly returning to the house, she retrieved her mobile phone and told her mother to "call the police."

Back outside, she again saw defendant "just going to town and beating the dog." Initially, the kicking was "[b]ad enough [that she] didn't know if the dog was gonna even live," though eventually, the kicking "wasn't as bad." She also saw defendant throwing rocks at Bosco, who at that point was lying on the side of the highway. Defendant then noticed the daughter and began "yelling profanity and telling us to mind our own F-ing business," just as officers arrived on the scene. After the incident, the daughter visited Bosco, who had been taken to the Coos County Animal Shelter. Bosco was "walking okay" and "getting in better health" but had a "permanent scar where the collar was."

The mother testified that, on the day of the incident, she and her daughter "were in the kitchen talking and [they] heard all kinds of commotion and went outside to see what it was." Following her daughter outside, she had just walked down the stairs when she heard her daughter shout, "Call 911," and, "This guy is gonna kill his dog." She then "saw the bicycle, [defendant], and the dog in the middle of the road." Defendant was "hang[ing] onto the bicycle handle for leverage, and the dog was on its back *** yiking"—which

sounded "like a scream, a howl"—and defendant was "kicking his dog, severely." She testified that defendant's kicking "wasn't just a slight little smack on the head. It was severe. Or I wouldn't be shaking like this." As soon as the mother saw defendant kicking Bosco, she "turned around to call 911 because [she] didn't want to see any more."

After the state rested, defendant moved for a judgment of acquittal on the second-degree animal abuse charge (Count 6), arguing that the state's evidence was insufficient to show that Bosco had suffered "substantial pain." The trial court disagreed and denied defendant's MJOA, explaining,

> "So you have this dog that is yelping *** on its back and is being kicked repeatedly. And, so, can one infer from that that there was substantial pain to the dog[?] Yes. I think that one can infer that the dog suffered substantial pain.

> "And the dog, you know, *** the dog can't testify. Yet, at the same time, you can take the other evidence around here as to how the dog reacted to what was happening to it. And the dog was in pain, it sounds like. And it sounds like it was pretty substantial, and it lasted for quite a while. At least, from the point of view of the [mother and daughter] of what they were witnessing there.

> "*****

> "*** But resting on the [daughter's testimony] alone, what the evidence is, is she thought that the animal was crying out in pain to such a degree that it had been hit by a car. And then you have evidence of [the mother] *** and based upon her demeanor and the way that she testified, she saw something or another and heard something or another that was *** serious and that obviously was traumatic to her. And based upon that, I think that one can infer that the animal suffered substantial pain.

> "*****

> "[I]s it the strongest piece of evidence? Would it have been stronger if they had gone and shaved the whole dog and looked for evidence of bruising? Yeah. But they didn't shave the dog. And, but what they did do is they brought in a bunch of witnesses who testified to the severity of the [defendant's] dog's pain. So, and the dog can only communicate with us via yelping and yipping and barking. So I don't

know how else a dog tells us that it's in pain, other than what it was doing in this instance.

"So I'm denying [the MJOA]."

After the parties rested, the jury returned a guilty verdict for second-degree animal abuse, and defendant was subsequently sentenced.[3] At the sentencing hearing, the court orally imposed $1,200 in fines, but it neither addressed defendant's ability to pay nor stated when those fines were due. After the sentencing hearing, the court issued a written judgment, which included a provision that the $1,200 in fines were "due in 30 days."

On appeal, defendant first contends that the trial court erred when it denied his MJOA as to second-degree animal abuse (Count 6). Defendant also contends that the trial court erred when it imposed fines "due in 30 days" without determining defendant's ability to pay those fines. We address each contention in turn, and for the reasons explained below, we conclude that the trial court did not err in denying defendant's MJOA but did err in ordering that defendant's fines were "due in 30 days."

## II.  ANALYSIS

### A.  *Second-Degree Animal Abuse & Defendant's MJOA*

Defendant contends that the trial court erred when it denied his MJOA as to second-degree animal abuse, because "the evidence does not permit a rational inference that Bosco experienced substantial pain." The state responds that the trial court did not err in denying the MJOA, because the testimony from the mother and daughter "would permit a rational factfinder to conclude that Bosco suffered pain that was more than fleeting or momentary."

In making those arguments, both parties acknowledge that the appellate courts of this state have yet to address the meaning of "substantial pain" in the context of

---

[3] The judgment of conviction in defendant's case included aggravated harassment, ORS 166.070 (Count 1); resisting arrest, ORS 162.315 (Count 2); interfering with a peace officer, ORS 162.247 (Count 3); second-degree disorderly conduct, ORS 166.025 (Counts 4 and 5); and second-degree animal abuse, ORS 167.315 (Count 6).

animal victims. As a result, both parties rely on case law interpreting "substantial pain" in the context of *human* victims. Such reliance is not unreasonable, yet we have an independent "obligation to determine the proper meaning of statutes, regardless of the correctness of the parties' arguments." *Lovinger v. Lane County*, 206 Or App 557, 565, 138 P3d 51, *rev den*, 342 Or 254 (2006). Accordingly, we begin by construing the phrase "substantial pain" as it pertains to second-degree animal abuse, ORS 167.315. In so doing, we apply the familiar principles set out in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009) (examining statutory text, context, and legislative history to discern legislature's intent).

1. *The Meaning of "Substantial Pain"*

We begin with the relevant text and context, including other provisions of the same statute or related statutes, prior versions of the statute, and case law interpreting the same statutory wording. *Wal-Mart Stores, Inc. v. City of Central Point*, 341 Or 393, 397, 144 P3d 914 (2006) ("[C]ontext includes other provisions of the same statute or related statutes *** as well as prior opinions of this court interpreting the same statutory wording."); *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 520, 238 P3d 395 (2010) ("Consideration of prior versions of a statute certainly is appropriate as part of a statute's context.").

The text of ORS 167.315 provides:

"(1)  A person commits the crime of animal abuse in the second degree if, except as otherwise authorized by law, the person intentionally, knowingly or recklessly causes *physical injury* to an animal."

(Emphasis added.) In turn, ORS 167.310(10) defines "physical injury" as "physical trauma, impairment of physical condition or *substantial pain*." (Emphasis added.)

Until 2001, ORS 167.310 provided that "'[p]hysical injury' has the meaning provided in ORS 161.015." ORS 167.310(5) (1999), *amended by* Or Laws 2001, ch 926, § 7. Then, as now, ORS 161.015 provided that "physical injury" meant "impairment of physical condition or *substantial pain*." (Emphasis added.) We have previously explained that,

as used in ORS chapter 161, "substantial pain" refers to pain that is "ample or considerable, and not fleeting or inconsequential," and it "refers both to the degree and the duration of pain subjectively experienced by a victim." *State v. Long*, 286 Or App 334, 340-41, 399 P3d 1063 (2017) (citations and internal quotation marks omitted). Thus, prior to 2001, "substantial pain" had the same meaning in the animal context as it did in the human context—*i.e.*, pain that is "ample" or "considerable," and not "fleeting" or "inconsequential."

In 2001, the legislature amended ORS 167.310, which defines "physical injury." But "[t]he fact that the legislature altered the wording of a statute does not always mean that it intended to alter the substantive effect of the statute." *Pete's Mountain Homeowners*, 236 Or App at 521. Indeed, the 2001 amendments indicate a legislative intent to retain the same meaning of "substantial pain." The definition of "physical injury" in ORS 167.310, aside from adding the words "physical trauma," uses verbatim the same definition of "physical pain" provided in ORS 161.015—*i.e.*, "impairment of physical condition or substantial pain." That context supports our understanding that, even after the 2001 amendments to ORS 167.310, the legislature intended that "substantial pain" would continue to have the same meaning in the animal abuse context as it does in the human context.

Legislative history further supports that understanding. The textual changes to the definition of "physical injury" in ORS 167.310 were among the amendments proposed in Senate Bill (SB) 230 (2001). As explained by Stephan Otto—a member of the workgroup that drafted SB 230—"this bill mainly fixes some of the problems with the definitions, so that law enforcement can adequately enforce these existing laws." Audio Recording, Senate Committee on Judiciary, SB 230, Feb 15, 2001, at 1:12:40 (comments of Stephan Otto, Animal Legal Defense Fund). "One such problem," Mr. Otto explained, "is that the current definition of 'physical injury' suffered by an animal borrows the same definition used for 'physical injury' of a person. *** [And] difficulty for prosecutors arises because animals, unlike people, can never voice the severity and duration of the pain they suffer." Testimony, Senate Committee on Judiciary,

SB 230, Feb 15, 2001, Ex D (statement of Stephen Otto, Animal Legal Defense Fund). To address that problem, the legislature added "physical trauma"—"a more objective standard"[4]—to the definition of "physical injury" in ORS 167.310, *id.*, but otherwise retained the existing definition borrowed from ORS 161.015—*i.e.*, "impairment of physical condition or substantial pain." That history suggests that the 2001 amendments to the definition of "physical injury" in ORS 167.310 were intended to expand upon the definition of "physical injury" to better fit the animal abuse context, not to replace the pre-2001 meaning of "substantial pain."

Based on that text, context, and legislative history, we understand that "substantial pain" in the animal abuse context has the same meaning as it does in the human context. With that meaning in mind, we next address whether the trial court erred when it denied defendant's MJOA.

2.  *Defendant's MJOA*

Defendant argues that the trial court erred when it denied his MJOA, because the state's evidence was not sufficient to show that Bosco suffered "substantial pain." "[E]vidence establishing substantial pain must meet both a degree or intensity threshold as well as a durational threshold." *Colpo*, 305 Or App at 693. Here, defendant does not challenge the sufficiency of the evidence as to the *degree* of pain; rather, defendant contends that the facts "do not permit an inference that Bosco experienced a significant *duration* of pain." (Emphasis in original.) "[W]ith respect to duration, 'substantial pain' cannot be 'fleeting' and must be more than 'momentary.'" *Id.* at 694 (quoting *State v. Guzman*, 276 Or App 208, 212, 366 P3d 816 (2016)). Thus, the narrow issue before us is whether, viewing the facts and all reasonable inferences in the light most favorable to the state, a rational trier of fact could find beyond a reasonable doubt that Bosco suffered pain that was more than "fleeting" or "momentary." We conclude that a rational factfinder could so find.

That conclusion is guided by our case law regarding "substantial pain." That case law has defined the limits

---

[4] Under ORS 167.310(11), "'Physical trauma' means fractures, cuts, punctures, bruises, burns or other wounds."

of "substantial pain" "primarily by describing what 'substantial pain' is not." *Guzman*, 276 Or App at 212; *see also, e.g.*, *State v. Johnson*, 275 Or App 468, 469-70, 364 P3d 353 (2015), *rev den*, 358 Or 833 (2016) (evidence that victim felt a "sting" when the defendant slapped her was insufficient to support a finding of substantial pain); *State v. Lewis*, 266 Or App 523, 529-30, 337 P3d 199 (2014) ("[E]ven if a trier of fact could infer that the hair-pulling caused the victim some pain, there is no evidence in the record that the degree or duration of the pain was sufficient to constitute 'substantial pain.'"); *State v. Rennells*, 253 Or App 580, 586-87, 291 P3d 777 (2012), *rev den*, 353 Or 410 (2013) (evidence insufficient to show "substantial pain" where the victim experienced bruising on her legs that lasted several days but did not testify that she had suffered any pain and, when asked by the prosecutor whether it hurt when the defendant kicked her, answered, "No, I was kicking him."); *Long*, 286 Or App at 342-43 (insufficient evidence of substantial pain where state failed to adduce any evidence of either the quality or duration of the victim's pain and the only evidence in the record about pain was the victim's testimony "squarely denying that she experienced any pain").

In other cases, however, we have addressed instances where the evidence was legally sufficient to show "substantial pain." *See, e.g.*, *Colpo*, 305 Or App at 694-96 (evidence sufficient as to both degree and duration where six-year-old victim was punched in the stomach and experienced "90 seconds of pain rated at a seven [out of ten]"); *State ex rel. Juv. Dept. v. Greenwood*, 107 Or App 678, 682, 813 P2d 58 (1991) (headache lasting approximately one hour after being hit on head with umbrella constituted substantial pain).

Regarding "substantial pain," we have observed that "in the context of an MJOA, whether the evidence was sufficient to submit that question to the factfinder depends upon what that evidence was." *Guzman*, 276 Or App at 212. But in "many of our 'substantial pain' cases, the victim has not testified." *Id.* at 213. In such cases, "the set of reasonable inferences that may be derived from the evidence is determinative as to whether the issue is submitted to the trier of fact," and "[t]he court's role is to determine—as a matter of law—where the sometimes faint line must be drawn between

those inferences that are reasonable and those that are too speculative." *Id.* Here, the victim, a dog named Bosco, did not (and could not) testify about his pain. Consequently, our analysis turns on the set of reasonable inferences that may be derived from the evidence.

We conclude that the evidence in this case is legally sufficient to support a reasonable inference that Bosco suffered pain that was more than "fleeting" or "momentary." The testimony adduced at trial was that Bosco was "yiking and whimpering" and "laying in submission" "on [his] back," while defendant "was kicking" Bosco "very hard." The mother testified that defendant's kicking "wasn't just a slight little smack on the head"; rather, defendant was "kicking his dog severely." Similarly, the daughter testified that defendant was "just going to town and beating the dog," and that defendant's kicking was initially "[b]ad enough" that she "didn't know if the dog was gonna even live," though eventually the kicking "wasn't as bad." The daughter also testified that she saw defendant throwing rocks at Bosco, who was lying on the side of the highway. That testimony about the severe nature of the kicking and the rock throwing is alone sufficient to support a reasonable inference that Bosco experienced pain that was more than fleeting or momentary. *See Colpo*, 305 Or App at 695 ("[T]he degree of pain felt by a victim can inform the determination of whether the pain was fleeting or momentary.").

Additionally, the daughter's testimony further supports an inference that, due to the repeated kicking and extended nature of the incident itself, Bosco's pain was more than fleeting or momentary. The daughter's account begins with hearing Bosco "yike" while she was standing in her mother's kitchen. Her account continues as she leaves the house to investigate the "yiking"; descends the stairs; sees defendant in the road kicking Bosco; goes back up the stairs and into the house; tells her mother to "Call 911"; retrieves her mobile phone from inside the house; again exits the house and descends the stairs; and returns to the scene to find that defendant is still kicking Bosco. Although there is no indication in the record as to the exact duration of the incident, that testimony nevertheless supports a reasonable inference that the incident itself—and, thus, Bosco's

pain—persisted for an extended period of time such that it was more than "fleeting" or "momentary."[5] *See Colpo*, 305 Or App at 695 ("As long as there is evidence in the record to establish that the pain is not 'fleeting' or is 'more than momentary,' it becomes a question of fact for the factfinder.").

For the above reasons, we conclude that the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Bosco suffered pain that was more than "fleeting" or "momentary." That is, the evidence was legally sufficient for a jury to find that the durational threshold for "substantial pain" was satisfied. Accordingly, the trial court did not err in denying defendant's MJOA.

B.  *Defendant's Fines*

Defendant next contends that the trial court erred when it imposed, and ordered the clerk to enforce, $1,200 in fines "due in 30 days"—in addition to a 24-month term of incarceration—without determining defendant's ability to pay those fines. The state concedes, and we agree, that the trial court erred in imposing that payment schedule without determining defendant's ability to pay. ORS 161.675(1) ("If a defendant is sentenced to a term of imprisonment, any part of the sentence that requires the payment of a sum of money for any purpose is enforceable during the period of imprisonment if the court expressly finds that the defendant has assets to pay all or part of the amounts ordered."); *State v. Foos*, 295 Or App 116, 117-20, 433 P3d 493 (2018). On that basis, we reverse and remand.

### III.  CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in denying defendant's MJOA. We further conclude, and the state concedes, that the trial court erred when it ordered that defendant's fines were "due in 30 days."

Reversed and remanded for entry of judgment omitting the "due in 30 days" requirement; otherwise affirmed.

---

[5] At oral argument, counsel for defendant estimated that the kicking incident lasted between 10 seconds and one minute. However, nothing in the record dispositively supports or refutes that estimate.