No. 70          February 4, 2026          869

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL VINCENT MENESES,
*Defendant-Appellant.*

Multnomah County Circuit Court
21CR05029; A183760 (Control)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL VINCENT MENESES III,
*Defendant-Appellant.*

Yamhill County Circuit Court
19CR29680; A183304

Rima I. Ghandour, Judge. (Case No. 21CR05029)

Ronald W. Stone, Judge. (Case No. 19CR29680)

Submitted December 19, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals from convictions following a bench trial for third-degree assault (Count 1), ORS 164.165(2)(a), and felony fourth-degree assault (Count 2), ORS 163.160(3), in case number 21CR05029. Defendant also argues for reversal of the judgment determining that he violated his probation in 19CR29680. The state charged defendant by indictment with one count of third-degree assault (Count 1) and three counts of felony fourth-degree assault (Counts 2-4).[1] Defendant's first four assignments of error allege that the trial court erred in denying his motions for judgment of acquittal (MJOA) on each count.

In case 19CR29680, the state alleged defendant violated his probation by failing to complete treatment, anger management, and pay restitution (allegation 1), and failing to obey all laws because of his conviction in 21CR05029 (allegation 2). Defendant's fifth assignment of error is that the trial court erred in revoking his probation based on his new convictions for third- and fourth-degree assault in 21CR05029. In reviewing a trial court's denial of a motion for judgment of acquittal, we review the evidence, including all reasonable inferences and credibility determinations that may be drawn from the evidence, in the light most favorable to the state. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994). Because we affirm defendant's convictions in 21CR05029, it is unnecessary for us to separately consider the alternative bases for revocation of defendant's probation in 19CR29680. We affirm the judgments in both cases.

Defendant lived in a trailer with 12 relatives including the victim, N, defendant's cousin. N was seven years old, on the autism spectrum, and "fairly nonverbal." Defendant slapped N three times and then punched him in the face because N had soiled his diaper. N's siblings, ages 8, 10, and 11, witnessed the assault. N screamed "mommy," said "owie really, really loud," and then began "really crying."

The defendant's sister called the police "as soon as the kids told [her]" what happened. When the officer arrived,

---

[1] Defendant's three fourth-degree assault charges were based on three minors witnessing the assault against the victim, N, and the charges merged. All charges in this case are based on the same conduct.

N stopped crying and was quiet. The officer testified that N's face was swollen, and it looked like a bruise was starting to form. The officer testified that N was "very quiet" when she was there, and he did not "say anything at all."

In court, N testified that he remembered getting an "owie" on his face from defendant. When asked how he felt when the "owie" happened, N testified:

"[Prosecutor]: How did you feel when the owie happened?

"[N]:   I don't know.

"[Prosecutor]:   You don't know? Okay. Did it hurt you at all?

"[N]:   No."

Additionally, others present when the incident occurred testified in court as to their perceptions of N's injury.

N's grandmother testified that, after the incident, N was crying and had a red mark on his cheek. From what she could recall, the red mark was a "half inch, maybe" and there was no swelling. She testified that N cried for about 30 minutes. She also testified that N did not express any pain or discomfort over the following days as the bruise developed. A cousin of N, and sibling of the defendant, testified that "[a]fter a couple of days, [the injury] died down."

A paramedic firefighter responded to examine N. According to the paramedic, N "stated that the injury site did not hurt during the medical evaluation[.]" N did not express any pain when the paramedic palpated around his eye, head, neck, and spine.

A CARES medical examiner conducted an evaluation of N at least three days after the incident. She testified N did not show any signs of distress and did not seem uncomfortable. She testified that she saw bruising around N's eye and cheek area and that the bruise was "yellow brown" and four centimeters long. She testified that N did not verbalize any injury, pain, or discomfort related to his face. She also testified that even a nonverbal child "would let you know" if palpation of a tender area was painful.

Defendant filed a written MJOA arguing that the state failed to present sufficient evidence to support a finding of physical injury for third- or fourth-degree assault. Specifically, defendant argued that N's injury did not result in impairment of physical condition or substantial pain. After the evidence was presented at trial, defendant orally moved for a judgment of acquittal, incorporating his written memorandum.

The state filed a written response to defendant's motion, arguing that it had presented sufficient evidence that a reasonable factfinder could find that defendant had caused N substantial pain. At the oral hearing, the state did not concede that there was no impairment of physical condition, but presented no arguments on that theory, focusing instead on the fact that there was substantial pain.

Defendant argues that both third-degree assault, ORS 163.165, and fourth-degree assault, ORS 163.160, require proof of physical injury. Physical injury is defined as "impairment of physical condition *or* substantial pain." ORS 161.015(7) (emphasis added). Physical injury requires "some form of external violence [that] produces a harmful effect upon the body; that is, circumstances which involve the infliction of actual physical injury—but not petty batteries not producing injury." *State v. Hendricks*, 273 Or App 1, 8, 359 P3d 294 (2015), *rev den*, 358 Or 794 (2016) (internal quotation marks and citation omitted).

Substantial pain is "considerable pain, which is something more than a fleeting sensation." *State v. Guzman*, 276 Or App 208, 212, 366 P3d 816 (2016) (internal quotation marks and citation omitted). Pain is assessed based on both the degree and the duration of the pain. *Id.* It is pain that is not inconsequential, and "fleeting pain is insufficient." *Id.*

To overcome an MJOA, evidence of "substantial pain" must meet both an "intensity threshold as well as a durational threshold—both of which are measured subjectively from the victim's point of view." *State v. Colpo*, 305 Or App 690, 693, 472 P3d 277, *rev den*, 367 Or 290 (2020).

The trial court denied the MJOA:

"And I am going to deny the judgment of acquittal. If we take the evidence viewed in the light most favorable to the [s]tate, there is sufficient evidence in the record that a rational trier of fact, using reasonable inferences, can find that physical injury—the physical injury element of Assault III and Assault IV has been proven beyond a reasonable doubt."

The court explained that the evidence could support findings that would satisfy the physical injury element on each assault charge:

"The [evidence] that I'm basing my opinion [on] are—are the demeanor of [N] when he presented in court, his size, testimony that he cried for half an hour, the immediate bruising, the fact that the bruising lasted several days, at least three from when the date of when he was initially photographed to the CARES photographs. He held his face and cheek and around his eyes. There's several testimony— from several people that he did that. That the punching was with closed fist. His clinging to his mother, pushing others away when he was crying, yelling loudly. Also [N's] nonverbal skills and how he presented in court with signs of autism. Falling to the ground after he was hit, shaking, saying owie, being—testimony that he was being frantic and scared and testimony that he showed discomfort."

There is sufficient evidence in the record to allow a reasonable factfinder to determine that N suffered "physical injury." That includes testimony about N's reaction at the time of the injury—screaming for his mother, crying for 30 minutes—and their description of what occurred—defendant slapping N three times and then punching him in the eye—as well as the police officer's description of N's injuries immediately after the assault—redness and swelling and the beginning of a bruise. Although there was evidence to the contrary, it is neither our role on appeal, nor was it the trial court's role in deciding the MJOAs to weigh the evidence at that point. Because we affirm the assault conviction, we do not address the probation violation issue. The assault convictions alone are enough to support the judgment of probation violation. Thus, we affirm.

Affirmed.